May Term, 1846.

M'CULLOCH v. THE INDIANA MUTUAL FIRE INSURANCE COMPANY.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*R. Jones*, for the plaintiff.

*Z. Baird*, for the defendants.

---

M'CULLOCH and Others *v.* THE INDIANA MUTUAL FIRE INSURANCE COMPANY.

8b 50
151 222

A policy of insurance against destruction by fire of a building, given by the *Indiana Mutual Fire Insurance Company,* is rendered void, and the lien of the company on the building is lost, by a sale or mortgage of the property by the assured.

The personal liability of the assured on his premium note is a matter, not of chancery, but of common law jurisdiction.

*Thursday, May 28.*

ERROR to the *Union* Circuit Court.

DEWEY, J.—The *Indiana Mutual Fire Insurance Company* brought a bill in equity against *S. M'Culloch, W. M'Culloch, Haworth, Stephens,* and *Vinnedge,* in *February,* 1843. The bill alleges that on the 1st *August,* 1838, *S. M'Culloch* procured from the complainants a policy insuring certain buildings from destruction by fire for six years, and at the same time executed his note to the complainants for the premium of insurance, amounting to 348 dollars;

May Term, 1846.

M'CULLOCH
v.
THE INDIANA
MUTUAL FIRE
INSURANCE
COMPANY.

that on the 28th *July*, 1842, there was assessed by the board of directors of the company, the sum of 46 dollars and 98 cents against *S. M'Culloch* for losses sustained by fire after *July* 11th, 1841, that being his rateable share of such losses by virtue of his premium note; that he had due notice of the assessment and refused to pay it; that on the 28th *November*, 1840, *S. M'Culloch* conveyed the ground, on which one of the insured buildings stood, to *Vinnedge*, in fee-simple, by a deed duly recorded; that he afterwards on the 31st *December*, 1841, mortgaged the same property to *W. M'Culloch* to secure 193 dollars and 67 cents, the mortgage being duly recorded; that on the 9th *July*, 1841, he conveyed the ground, on which the other insured buildings stood, to *Haworth* and *Stephens*, in fee-simple, by a deed duly recorded; that *S. M'Culloch* was insolvent; and that his premium note was a lien on the insured buildings and the land on which they stood. The prayer of the bill was, that the premium note be decreed to be paid; that the same be made a charge on the insured premises; and that in default of payment the premises, or enough to satisfy the debt and costs, be sold, &c. All the defendants, excepting *S. M' Culloch*, demurred to the bill, and the demurrer was overruled. These defendants declining to answer, the bill was taken as confessed against them.

*S. M'Culloch* answered, making his answer a cross-bill, from which, the answer thereto, and the depositions, the following further facts appeared. The deed to *Vinnedge* and that to *Haworth* and *Stephens*, mentioned in the bill, were mortgages, being subject to defeasances, which were duly recorded. In *February*, 1841, the complainants recovered a judgment against *S. M'Culloch*, before a justice of the peace, for 76 dollars and 50 cents for assessments of losses made previous thereto. On the 11th *August*, 1841, another assessment was made against him for 28 dollars and 71 cents. About the 1st *October*, 1841, *S. M'Culloch* gave his policy to the complainants' agent, for the purpose of having it surrendered and cancelled, that he might lift his premium note. The agent sent the policy to the proper officers of the company at *Indianapolis*, who returned it informing the agent that the company would not receive the same and cancel it,

May Term,
1846.

M'Culloch
v.
The Indiana
Mutual Fire
Insurance
Company.

unless *S. M'Culloch* would first pay the judgment against him and the assessment of *August* 11th, 1841, but that if he would pay those demands the policy should be cancelled, and the premium note given up, of all which *S. M'Culloch* was informed. On the 1st *December*, 1841, he paid the agent the full amount, as was supposed, of the judgment and of the assessment of *August* 11th, 1841, and took a receipt in full; but owing to an error of computation by the agent, the sum paid was too small by ten dollars, leaving that amount still due the complainants. This sum *S. M'Culloch* refused to pay until the 22d of *September*, 1843 (after the filing of the bill), when he paid it and the interest. In the mean time, the complainants, in addition to the assessment of the 28th *July*, 1842, mentioned in the bill, continued to make assessments against *S. M'Culloch* up to the time of the commencement of the suit.

The Court decreed that the complainants recover of *S. M'Culloch* 348 dollars, the amount of his premium note, to be discharged, however, by the payment of 103 dollars and 94 cents, that being the amount of the assessments against him in arrear at the expiration of his policy; that the sheriff of the county sell the insured buildings and the ground on which they stood; and that from the proceeds of the sale he first pay the costs of suit, then 103 dollars and 94 cents to the complainants, and the balance if any to *S. M'Culloch*.

By the charter of the *Indiana Mutual Fire Insurance Company*, which is a public act, it is provided that any person who may take an insurance from the company shall become a member thereof; that at the time of receiving his policy, he shall give his note for the amount of the premium, a part of which not to exceed ten *per cent.* to be prescribed by the directors shall be paid down, and the remainder payable in part or in whole at any time when the directors shall deem it requisite to meet losses, or other expenses; and at the expiration of the term of insurance, the premium note, or such part of it as shall remain unpaid, shall be surrendered to the maker. The directors are required, if any of the insured property shall be destroyed by fire, to make an annual assessment of the same, and to apportion to each member of the company his share of the loss according to the amount of his

May Term, 1846.

M'CULLOCH
v.
THE INDIANA
MUTUAL FIRE
INSURANCE
COMPANY.

premium note; and if such member shall refuse, for thirty days after proper notice given, to pay his assessment, the company is authorized to bring suit on his premium note, and recover the whole amount thereof, which when collected shall remain in the treasury of the company, subject to the payment of losses incurred or to be incurred during the period of insurance, the balance, if any, to be returned to the assured. "All buildings insured by and with said company, together with the right, title, and interest of the assured to the lands on which they stand, shall be pledged to said company; and the said company shall have a lien thereon against the assured" during the continuance of his policy. But, "when any house or other building shall be alienated by sale or otherwise, the policy shall be void, and be surrendered to the directors of the company to be cancelled; and upon such surrender the assured shall be entitled to his deposite (premium) note, upon the payment of his proportion of all losses and expenses that have occurred prior to such surrender;" provided, however, that the alienee may, with the consent of the company, take an assignment of the policy in the manner pointed out by the charter.

These are all the provisions of the act of incorporation that have any bearing upon the cause before us; and they do not, in our opinion, sustain the decree of the Circuit Court. The object of the bill was to enforce a supposed lien on the insured property in the hands of purchasers from the assured. But the lien given by the charter is in terms confined to insured persons, and limited in duration to the continuance of the policy. Whether this latter provision can be so construed as to extend the lien so as to bind the property in the hands of the assured himself, after the expiration of the policy, for liabilities incurred before, it is not now necessary to decide; but by no latitude of construction can it be extended to his grantee or alienee. There is not a single provision in the charter, from which we can infer that it was designed the lien should operate against him, unless he should choose to continue the policy by taking an assignment of it in the manner prescribed. On the contrary, the omission to make any provision for giving notice to the public of the existence of the lien created by the act, is a strong argument that the

May Term,
1846.

M‘CULLOCH
v.
THE INDIANA
MUTUAL FIRE
INSURANCE
COMPANY.

legislature did not design to extend it to purchasers of the insured property. A person not a member of the company has no right to inspect the books and files of the company kept at *Indianapolis*—the only source of sure information of what property has been insured. We cannot believe it was the design of the legislature. to subject purchasers to the operation of a lien, the existence of which they had no sure means of ascertaining. But what is conclusive on this subject is, that an alienation of the insured property, *ipso facto*, renders the policy void, unless the purchaser with the consent of the company takes an assignment of it, and secures the premium note of his grantor; and by the express enactment of the charter the company's lien exists only during the existence of the policy. As no assignment of the policy under consideration was made or attempted, both the policy and the company's lien on the insured property ceased to exist, provided the assured, *S. M‘Culloch*, made an alienation of the property.

The point on which we have doubted is, whether a mortgage is an alienation within the meaning of the charter? We have come to the conclusion that it must be so considered. If it be viewed in any other light one of two consequences must follow,—either every insured person has it in his power to destroy the value of the company's lien on the insured property by mortgaging it for as much as it is worth, while the liability of the company will continue on the policy, or a mortgagee must be subjected to the operation of a secret lien, to discover which is beyond his power. There is injustice in either result, but it is obviated almost entirely by considering a mortgage as such an alienation as shall at once annul both the policy and lien.

But though the policy was avoided and the lien annulled by the alienation of the insured property by *S. M‘Culloch*, still his personal liability continued on the premium note, until an actual surrender of the policy to the company, and the payment of all assessments against him for losses sustained by the company before the surrender. Whether the facts of the case show that he discharged this liability or not, it is not material now to decide; for if he did not, that liability is a matter exclusively of common law jurisdiction, and

can give the company no right to seek relief against him in a Court of equity. According to the view we have taken of the subject there is no equity against the other defendants. Their demurrer to the bill should have been allowed.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. Perry* and *J. S. Reid*, for the plaintiffs.

*J. S. Newman* and *J. Yaryan*, for the defendants.