INSURANCE COMPANY OF NORTH AMERICA *v.* MARTIN
ET AL.

[No. 18,655.    Filed October 11, 1898.]

INSURANCE.—*Forfeiture.—Conveyance.—Right of Subrogation.—Mortgage Clause.*—A policy of insurance conditioned that if a transfer of the property insured should be made without the consent of the insurer in writing the insurance should cease from the date of the change of ownership, contained a mortgage clause, attached thereto at the instance of the insured, to the effect that if the insurer should pay the loss to the mortgagee, and should claim as to the mortgagor, that it was not liable for the loss so paid, it should be subrogated to the rights of the mortgagee.  The property was sold and transferred without the written consent of the insurer, and, thereafter, was destroyed by fire.  The insurer paid to the mortgagee the amount of the policy and received an assignment of the note and mortgage to the extent of the loss paid, and brought suit on such note and mortgage.  *Held,* that the transfer of the property avoided the policy as to the owner, and that the mortgage clause constituted a valid contract between insurer and mortgagee, and that the insurer could recover on the note and mortgage assigned it by the mortgagee.  *pp. 209-227.*

LIMITATION OF ACTIONS.—*Mortgages.—Default in Payment of Interest.*—Default in payment of interest will not start the running of the statute of limitations against a note secured by mortgage containing a condition empowering the mortgagee to declare the entire debt due upon failure to pay any installment of interest.  *pp. 227, 228.*

From the Whitley Circuit Court.    *Reversed.*

*Finch & Finch* and *B. E. Gates,* for appellant.

*T. R. Marshall, W. F. McNagny* and *P. H. Clugston,* for appellees.

JORDAN, J.—Appellant commenced this action against appellees, Stephen A. and Nancy Martin, the Aetna Life Insurance Company, and William McMannen, by a complaint in four paragraphs, to foreclose a mortgage upon certain described real estate, situated in Whitley county, Indiana.  Omitting some of the

facts alleged in the complaint not essential to the determination of the controversy in this appeal, the following may be said to be a summary of the facts alleged in the first paragraph of the complaint:   On August 26, 1885, appellee William McMannen, who was then the owner of the mortgaged premises, secured a loan of $1,000 from the Aetna Life Insurance Company, and on that day executed to it his note for that amount, which was to be due and payable on January 1, 1890.   To this principal note there were attached coupon interest notes, due and payable as therein mentioned.   McMannen and wife, to secure the payment of this loan, together with the interest thereon, when due, on the same date executed to the said Aetna Company, a mortgage, whereby they mortgaged the real estate described in the complaint. This mortgage was duly recorded as required by law, in the recorder's office of Whitley county, Indiana. McMannen, the mortgagor, to further secure the mortgagee, procured appellant to issue to him a policy of fire insurance, bearing date of September 1, 1885, whereby the dwelling house situated upon the mortgaged land was insured against loss by fire to the amount of $300.   This policy, among others, contained the following provisions and stipulations:   "If the insured shall, by voluntary transfer or conveyance, dispose of the property covered by this policy, or of an undivided   interest   therein,   *   *   *,   this   policy may be assigned to the party or parties succeeding to the ownership of the property, provided the company shall first consent thereto by indorsement hereon; otherwise, this insurance shall cease from the date of such change of ownership."

Attached to this policy, and constituting a part thereof, is what is denominated a "mortgage  clause," and the provisions and stipulations of this clause are

as follows: "It is agreed that any loss or damage
that may be ascertained and proved to be due under
this policy to the assured, shall be held payable for
the account of said assured to Aetna Life Insurance
Co., mortgagee, subject to the folowing stipulations:
(1) It is agreed that this insurance, as to the inter-
ests of the above-named mortgagee or beneficiary in
the trust deed only therein, shall not be invalidated
by any act or neglect of the mortgagor or owner of
the property insured, nor by the occupancy of the
premises for purposes more hazardous than are per-
mitted by the terms of this policy, nor by any change
in title or possession, whether by voluntary transfer,
legal process, or conveyance of the property. Pro-
vided, that the mortgagee or beneficiary shall notify
this company of any change of ownership or increase
of hazard, which shall come to the knowledge of such
mortgagee or beneficiary, and shall have permission
for such change of ownership, or such increased haz-
ard duly indorsed on this policy; and provided, fur-
ther, that every increase of hazard not permitted to
the mortgagor or owner shall be paid by the mortga-
gee or beneficiary, on reasonable demand, and after
demand made by the company upon, and refusal by
the mortgagor or owner to pay according to the estab-
lished scale of rates; the company reserving the right
to cancel the policy at any time on the terms in said
policy provided, on giving to the mortgagee ten days'
notice of their intention so to do, and after said ten
days this policy and this agreement shall be void.
* * * (2) It is also agreed that whenever this
company shall pay to the mortgagee or beneficiary
any sum for loss on this policy, and shall claim that
as to the mortgagor or owner, no liability therefor
existed, it shall at once, and to the extent of such
payment, be legally subrogated to all the rights of the

party to whom such payment shall be made, under any and all securities held by such party on the property in question, for the payment of said debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured, or this company, at its option may pay to the mortgagee or beneficiary the whole of the debt so secured, including such sums as said mortgagee or beneficiary may then have paid for taxes or fire insurance upon the property described in such mortgage or trust deed, pursuant to the terms thereof, with all the interest that may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment is made an assignment and transfer of said debt, with all securities held by said party on the property in question, for payment thereof." On March 1, 1888, without the knowledge or consent of appellant, McMannen sold, and, together with his wife, conveyed the mortgaged real estate, upon which the house insured was situated, to the appellee Stephen A. Martin, and Martin went into possession of the property under this sale and conveyance. The fire insurance policy was not assigned nor in any manner transferred to Martin, and appellant was at no time requested to assign the policy to him.

After the sale and conveyance of the mortgaged premises, as aforesaid stated, on April 4, 1888, the house insured was totally destroyed by fire. Martin, who was at the time the owner of the premises under the sale and conveyance mentioned, gave no notice to appellant of the fire, and made no claim against it for the indemnity under the policy. After the fire the mortgagee, under the provisions of the mortgage clause of the policy, demanded payment for the loss of said house, and on July 20, 1888, appellant, under the provisions of the policy and the mortgage clause

thereof, paid to the mortgagee, the Aetna Company, $300, and the latter, as required by the mortgage clause, upon the payment of said amount upon the loss, assigned by indorsement to appellant $300 of the amount of the said principal mortgage note, said indorsement being as follows: "September 21, 1888. Received on the within note, $283.15 principal, and also $16.85 interest, from the Insurance Company of North America, and that amount of this note is hereby assigned to said Insurance Co., for their use as their rights may appear under their contract of subrogation, and without recourse upon this company. [Signed] Aetna Life Insurance Co., by M. G. Bulkeley, President. [Corporate Seal.]"

The Aetna Company also assigned by writing, duly acknowledged and recorded in the recorder's office of said county, its interest in said mortgage security to the amount of $300. It is also averred that Stephen A. Martin, as a part of the purchase-money for said land, assumed the payment to the Aetna Company of the mortgage debt, and that he has paid all of said debt except the $300 assigned to plaintiff, and the interest thereon, and that he denies his liability as to said amount; and there is now due and unpaid of the said amount, principal and interest, the sum of $500. The prayer of this paragraph, among other things, is for a personal judgment against Stephen A. Martin for $500, and for a foreclosure of the mortgage in payment and satisfaction of the judgment. Copies of the policy, note, and mortgage, together with the indorsement and assignments mentioned, are filed as exhibits with the first and second paragraphs of the complaint. The second paragraph is substantially the same as the first, except that it does not demand a personal judgment, but prays only for a foreclosure of the mortgage. The third paragraph makes no men-

tion of the insurance policy, nor the mortgage clause attached, but simply alleges the execution of the mortgage and note and assignment of a part thereof to appellant, the assumption of the payment of the debt by Martin, and asks for a judgment against Mc-Mannen, and prays for a foreclosure of the mortgage. Copies of the note and mortgage and the assignment mentioned are filed as exhibits with the third and fourth paragraphs of the complaint. The fourth paragraph is substantially like the third, except that it demands a personal judgment against Martin and also a foreclosure of the mortgage.

Appellees Martin and wife, having unsuccessfully demurred to each paragraph of the complaint, filed their joint answer thereto, consisting of eleven paragraphs; the first being a general denial. Appellant demurred to each of these paragraphs except the first, and this demurrer was sustained to the fourth, fifth, sixth, and tenth paragraphs and overruled to the others.

Appellee McMannen was defaulted, and the Aetna Life Insurance Company filed an answer in denial. The second paragraph of Martin and wife's answer, we are informed by the briefs of the respective counsel, interposed as a defense the six-years' statute of limitations; but this original second paragraph does not appear in the record, for the reason that after the demurrer thereto was overruled, and at a subsequent term of court, appellees, upon leave of court, filed a second amended paragraph of answer, whereby they plead the six-years' statute of limitations. No demurrer appears to have been filed to this amended paragraph. The filing of this latter paragraph, of course, eliminated the original second paragraph of the answer from the record, and the clerk, in preparing the transcript, has properly omitted it. Conse-

quently, under the circumstances, the record presents no question on the court's ruling upon the demurrer to the original second paragraph of answer. The third paragraph pleads payment. The seventh is addressed to the first and second paragraphs of the complaint, and when stripped, in part at least, of conclusions, the facts therein set up as a defense to these two paragraphs of the complaint, are substantially as follows: The execution of the notes and mortgage by McMannen to the Aetna Company, and the issuing of the policy by appellant to McMannen, and the sale and conveyance of the land as averred in the complaint, are all admitted. It is then disclosed by the averments that the mortgagor procured the said insurance policy from appellant, and paid all the premiums therefor; that the mortgage clause was inserted in the policy at the request of the mortgagor, and that the mortgagee did not procure the policy, and paid no part of the premiums; that J. C. Wigent, of Columbia City, Indiana, was the agent of the plaintiff, and issued the said insurance policy as said agent, and that he was also the agent of the mortgagee in obtaining the mortgage in controversy.

At the time the mortgaged property was sold and conveyed to Martin, neither he nor his said wife had any knowledge of the existence of the insurance policy, and did not obtain any knowledge in regard thereto until long after the said sale and conveyance; and had the defendant Martin known of the policy when the property was conveyed to him, he "could and would have procured an assignment of the policy to him with the consent of the plaintiff." The appellant had full knowledge of the sale and conveyance of the property to Martin within a few days thereafter. The mortgaged premises, apart from the house situated thereon, were of a value which exceeded four

times the amount of the mortgage debt. It is further alleged that the defendant Martin purchased the mortgaged premises for occupation as a home, and within a few days after the conveyance to him, he moved his family and his household goods into the dwelling house thereon, which was the same insured under said policy, and thereafter continued with his family for some weeks to occupy the house as a home, until it was destroyed by fire. It is alleged that his occupation was a careful and prudent one, and that he exercised unusual precautions to guard against the hazards of fire. The fire, which destroyed the said dwelling house occurred in the day time, and the defendants, together with the aid of their neighbors made every exertion to stay the progress of the flames. The origin of the fire was by reason of sparks from the chimney falling upon the roof of the house, and resulted from natural causes, and without any fault or negligence upon the part of either Martin or his wife. It is averred that the fire was one of the hazards which the plaintiff assumed when it issued said policy, and that said hazard was in no manner increased by the conveyance of the property to the defendant Martin. And it is also alleged that said house would have burned precisely as it did, had McMannen not conveyed the premises to Martin. After the fire, the defendant Stephen A. Martin, made proof to the plaintiff of the loss, which the latter accepted without protest, or notice to said defendant that it did not regard itself as liable or bound to him under the policy. And it is also averred that plaintiff voluntarily paid the loss to the said mortgagee, the Aetna Company, in accordance with the stipulations and provisions contained in the policy, and now contends that by reason of said payment, and by enforcing the provisions of forfeiture embraced in said

policy, relative to the conveyance of the insured property by McMannen, that it is subrogated to the rights of the mortgagee in the mortgage, to the extent of the loss paid, and that it is entitled, to that extent, to foreclose said mortgage; that plaintiff, in paying said loss to the mortgagee, only discharged the obligation which it had assumed, and ought not to be heard, in a court of equity, to demand an enforcement of a penalty or forfeiture to relieve it from its obligation.

The eighth paragraph is a denial of the averments of the third and fourth paragraphs of the complaint, and the ninth is a plea of payment. The eleventh paragraph is directed to the third and fourth paragraphs of the complaint, and recites the facts out of which, as it is alleged, the cause of action accrued upon which these paragraphs of the complaint are said to be based. After admitting the execution of the note and mortgage to secure the same to the Aetna Company, by McMannen, upon the mortgaged premises, this paragraph proceeds to allege substantially the following facts: McMannen, on the day he executed the mortgage in suit, procured from the plaintiff the policy of insurance in question upon the dwelling house situated upon the mortgaged premises, to the amount of $300. This policy contained a clause of forfeiture, to the effect that, if McMannen sold or conveyed the property covered by the policy, without the consent of the insurer, appellant herein, the insurance should cease from the date of said conveyance. At the request of the said mortgagor a clause was inserted in the policy to the effect that the loss, if any, should be paid by the plaintiff to the said mortgagee in discharge of the mortgage debt, and the plaintiff, as against the mortgagee, should waive its right to insist on the provisions for for-

feiture. The mortgage clause, it is averred, further provided that if the plaintiff should pay said loss to the mortgagee, and should claim as to the mortgagor, that it was not liable for the loss so paid, it should be subrogated to the rights of the mortgagee, and should receive from it an assignment of the note and mortgage, to the extent of said payment; that subsequent to the execution of the said mortgage and policy, said McMannen and wife conveyed the mortgaged real estate to the defendant Stephen A. Martin, and that the plaintiff had full knowledge of said conveyance, and made no objections thereto, but did not formally nor in writing consent to said conveyance. At the time of the conveyance the defendants had no knowledge of the existence of the insurance policy, and had they known of its existence, it is alleged, they "would and could, with the consent of the plaintiff, have procured the assignment of said policy" to Martin as purchaser. Plaintiff, with the full knowledge of such conveyance, failed to give to the defendant Martin, notice of its desire to cancel the policy or forfeit the same by reason of said conveyance. The paragraph then proceeds to allege substantially the same facts as does the seventh paragraph of the answer relative to the value of the mortgaged premises being in excess of the mortgage debt, and also in regard to the careful and prudent manner in which the defendants occupied the house, and that the fire occurred without any fault or negligence upon their part, and the unavailable efforts which were made to subdue the fire, and that said building would have been destroyed precisely as it was, had said conveyance not been made. It is then averred that after the fire, Martin made proof of loss to the plaintiff, which was accepted without protest, and that appellant paid the amount of the insurance, to wit, $300,

to the said mortgagee, the said Aetna Company, to be applied by it to that amount in discharge of the mortgage debt. That, after said payment, plaintiff claimed that it was entitled, under the provisions of the policy, relative to the transfer of the property, and under the terms and conditions embraced in the mortgage clause thereof, to demand and receive from the mortgagee an assignment of the note and mortgage to the extent of the loss paid by it to the mortgagee, and under said demand it obtained the assignment set forth in the complaint; and it is alleged that plaintiff has no other or different rights in this case "than such as have equitably accrued to her under the aforesaid facts."

It is then averred, that prior to the commencement of this action, plaintiff gave the defendants no notice that it intended to hold the policy void as to the defendant Stephen A. Martin; and to maintain this action, it is alleged that plaintiff has come into a court of equity after more than six years have elapsed from the time the payment of the loan was made, and now seeks to enforce a forfeiture of the policy by reason of the breach against the conveyance of the property, which breach has occasioned it no injury, and it also seeks to be relieved from its obligation to pay the loss, which equity, as it is averred, will not permit; and the paragraph closes with a demand for judgment in favor of the defendants. This latter paragraph, like the seventh, is replete with conclusions, and these, in part at least, we have eliminated. After the ruling of the court on the demurrer to the answer, appellant replied thereto by a general denial, and the cause, being at issue, was submitted to the court, and upon the evidence being heard the court made a special finding of facts, and stated its conclusions of law thereon in favor of defendants, and, over

appellant's motion for a new trial, rendered its judgment to the effect that appellant take nothing by the action, etc.

It is apparent, and in fact is not denied by appellant, that the assignment of the mortgage debt, together with the mortgage security, as alleged in the third and fourth paragraphs of the complaint, arises out of and is based upon the same facts and circumstances disclosed by the first and second paragraphs of the complaint. Aside from the question in regard to the statute of limitations, the cardinal one, which the parties to this appeal seek to have determined, is the right of appellant to prevail in this action, when the facts, as alleged in the seventh paragraph of the answer, are considered with reference to their being a complete bar to the cause of action set up in the first and second paragraphs of the complaint; but, in determining the sufficiency of the answer in its application as a defense to these paragraphs of the complaint, we may first properly review and consider some of the material facts as disclosed by the complaint and the exhibits filed therewith. It appears that McMannen, in August, 1885, when he was the owner of the real estate on which the house that was destroyed by fire was situated, obtained from the Aetna Company a loan of $1,000, and executed to this company his promissory note for that amount, to become due and payable on January 1, 1890; and to secure the payment of the principal note, together with the coupon interest notes when due, he and his wife mortgaged the said real estate to the said Aetna Life Insurance Company. As a further security to the mortgagee for this loan, he procured appellant to issue to him a fire insurance policy on the house in controversy, insuring him against loss thereof by fire to the amount of $300. This policy, as we have

seen,. contained a prohibitory provision against the transfer or alienation of the property insured.   It was provided, however, that in the event of the transfer or conveyance of the property covered by the insurance, the policy might be assigned to the person succeeding to the ownership of the property, provided that the consent of the insurer (appellant herein) to such assignment of the policy was first obtained by indorsement thereon; otherwise, it was stipulated and provided, that the insurance, under the policy, should cease from the date of such change of ownership.   Attached to this policy as a rider, and made a part thereof, was the usual mortgage clause, wherein it was agreed "that any loss or damage that may be ascertained or proved to be due under this policy, to the assured, shall be held payable for the account of said assured to the Aetna Life Insurance Company, mortgagee, subject to the following stipulations." Among these stipulations, and those particularly applicable to the question here involved, are the following: "It is also agreed that whenever this company shall pay to the mortgagee or beneficiary any sum for loss under this policy, and shall claim that as to the mortgagor or owner, no liability therefor existed, it shall at once, and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made, under any and all securities held by such party on the property in question, for the payment of said debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured."   After the execution of the mortgage and fire policy in controversy, McMannen conveyed all of his right and title in the property to the appellee, Martin, without any assignment to him of the policy. These facts are not only disclosed by the complaint,

but are also shown by the answer of appellee. It is certainly evident, in the light of the facts and circumstances of this case, considering the prohibition of the policy against alienation of the insured property, that when McMannen conveyed his title to the mortgaged premises to Martin without any assignment of the insurance policy to the latter, that the relations which existed under the policy between appellant, as insurer, and McMannen, as the insured, were dissolved or terminated by virtue of the express stipulations of the policy, and from and after the date of the change of title of the insured property, neither the mortgagor nor his vendee had any rights or concern in the policy, and thereafter, under the circumstances, appellant owed no duty to either of said parties. For it is a general and well settled principle of insurance law that a policy of fire insurance is peculiarly a personal contract, and does not run nor pass with the title to the insured property, in the absence of special stipulations providing therefor. The alienation of the insured property, as the authorities affirm, *ipso facto*, avoids or invalidates the policy, unless the purchaser, with the consent of the insurer, takes an assignment thereof; and an assignment, generally speaking, must be made with the knowledge and consent of the insurer. Especially is this essential when the policy requires the assignment to be made with the consent of the insurer. Among the many authorities which fully support the foregoing propositions, the following may be consulted: *Lett* v. *Guardian Fire Insurance Co.*, 125 N. Y. 82, 25 N. E. 1088; *Ayres* v. *Hartford Fire Insurance Co.*, 17 Iowa 183; *Simeral* v. *Dubuque Mutual Fire Insurance Co.*, 18 Iowa 319; *Hartford Fire Insurance Co.* v. *Ross*, 23 Ind. 179, 85 Am. Dec. 452; *McCulloch* v. *Indiana Mutual Fire Insurance Co.*, 8 Blackf. 50; *Indiana*

*Mutual Fire Insurance Co.* v. *Coquillard*, 2 Ind. 645; *American Insurance Co.* v. *Gallagher*, 50 Ind. 209; May on Insurance, section 6; *Carpenter* v. *Providence Washington Insurance Co.*, 16 Peters 495; *Savage* v. *Howard Insurance Co.*, 52 N. Y. 502; *Sterling Fire Insurance Co.* v. *Beffrey*, 48 Minn. 9, 50 N. W. 922, 7 Am. and Eng. Ency. of Law, 1028; *New England Loan and Trust Co.* v. *Kenneally*, 38 Neb. 895, 57 N. W. 759. The property insured in this case, it appears, was destroyed by fire on April 4, 1888, over a month after the mortgagor had transferred all of his right and title to Martin; consequently, at the time of the fire, and for over a month prior thereto, all of the rights of the mortgagor in the policy, under its express provisions and stipulations, had been destroyed and terminated by his own voluntary act, and he was in no position to demand that appellant pay the indemnity to the mortgagee for his benefit, nor for that of his vendee; and certainly the latter, who was a stranger in all respects to the policy, in the absence of a proper assignment, had no rights whatever thereunder, and each were in the same attitude as though the policy had never actually existed.

We may properly next consider the rights of appellant under the policy in dispute. There is no question, in view of the well settled principles of insurance law, but what the mortgage clause in the case at bar constituted a contract between appellant, the insurer, and the Aetna Life Insurance Company, the mortgagee. By this contract the terms and conditions of the policy relative to the neglect of the mortgagor, or owner of the property, and the prohibition against the alienation thereof, etc., were modified, and the mortgagee was thereby removed beyond the effect or control of these stipulations and conditions.

*City, etc., Savings Bank* v. *Penn. Fire Insurance Co.,* 122 Mass. 165; *Hartford Fire Insurance Co.* v. *Olcott,* 97 Ill. 439; *Westchester Fire Insurance Co.* v. *Coverdale,* 48 Kan. 446, 29 Pac. 682; Richards on Insurance, section 158.

In *Hartford Fire Insurance Co.* v. *Olcott, supra,* in considering such a clause, the court said: "The mortgagor and mortgagee held distinct interests under the original policy, which in effect constituted two contracts." The provisions of the contract created by the mortgage clause in question also provided for subrogation in the event the policy was invalidated as to the interest of the mortgagor or owner. An examination of this clause will disclose that the agreement therein relative to this feature of the case, in substance, is that whenever appellant paid to the mortgagee any sum for loss under the policy, and denied its liability as to the mortgagor or owner of the property, appellant at once, to the extent of such payment, became legally subrogated to all the rights of the mortgagee in and to all securities held by it for the payment of such debt, etc. It is evident, we think, that one of the conditions or considerations which actuated appellant to agree to waive, among others, the provision relative to the alienation of the property, and to agree to pay the indemnity to the mortgagee regardless of the change of title, was the stipulation or agreement contained in the mortgage clause for its subrogation or substitution to all the rights of the mortgagee in the debt and mortgage lien to the extent of any sum paid to the mortgagee under the policy for the loss of the property by fire.

The contract, in effect, provided that after the policy had been invalidated by alienation of the property, that the indemnity therein provided should remain wholly for the benefit of the mortgagee, and

that neither the mortgagor nor those claiming title to the property through him, in the absence of an assignment, should be entitled to any beneficial interest therein, and that payment of the loss to the mortgagee should not be a discharge of the mortgage indebtedness, but such payment should at once legally operate to subrogate, *pro tanto*, appellant to the rights of the mortgagee in the mortgage debt, and the mortgage lien as security; or appellant, at its option, had the right to pay the entire debt to the mortgagee, and thereby succeed to all the rights of the latter through an assignment; or, in other words, the provisions of the mortgage clause, under the circumstances, were to the effect that the amount due for the loss of the property, after the transfer of its title, should not be a fund to be applied as a payment upon the mortgage debt, for the benefit of the mortgagor or owner of the insured property, but that on payment of the loss to the mortgagee, the indebtedness to the extent of the loss paid, should remain and be deemed a fund for the reimbursement of appellant as the insurer. *Sterling Fire Insurance Co.* v. *Beffrey, supra; Ulster County Savings Institution* v. *Howe Insurance Co.*, 73 N. Y. 161; *Allen* v. *Watertown Fire Insurance Co.*, 132 Mass. 480; *Dick* v. *Franklin Fire Insurance Co.*, 10 Mo. App. 376, (Affirmed in 81 Mo. 103); *Honore* v. *Lamar Fire Insurance Co.*, 51 Ill. 409; *Carpenter* v. *Providence Fire Insurance Co., supra; Aetna Fire Insurance Co.* v. *Tyler*, 16 Wend. 397; Sheldon on Subrogation (2nd ed.) section 237; Jones on Mortgages (5th ed.) section 420.

Certainly, under the facts disclosed by the first and second paragraphs of the complaint, the special agreement or stipulation for subrogation contained in the policy, was binding on the mortgagee, and it

seems to have so considered it, for, as the complaint shows, upon the payment of the loss, the mortgagee by indorsement, assigned to appellant an amount of the principal mortgage debt equal to the amount which appellant paid in satisfaction of the loss of the property destroyed, and at the same time, the mortgagee, in accordance with the method prescribed by section 1107, Burns' R. S. 1894, also assigned, to a like extent, the mortgage security. In fact, appellant may be said, by virtue of its subrogation under the agreement and the circumstances in the case, virtually to occupy the position of an assignee or purchaser from the mortgagee for value. Sheldon on Subrogation, sections 5, 6 and 248. This is not, as appellees seemingly insist, an action to enforce subrogation, but it is one for the foreclosure of a mortgage; and the question, in the main, is, was the subrogation upon which appellant, under the facts, relies, warranted thereby? That it was, and that the debt, to the amount paid with interest, in the light of the authorities cited, still exists in favor of appellant, there is no doubt. That the facts set up in the seventh paragraph of the answer are insufficient as a bar to this action, is equally manifest. Appellees, as we have seen, were strangers to the insurance policy. At no time does it appear that they, or either of them, had any interests or rights whatever therein. After the change of title, the insurance, under the policy, existed for the benefit of the mortgagee, and for its benefit alone. How, then, under the circumstances, appellees can avail themselves of its provisions to defeat this action of appellant, is not apparent. The averments, or rather surmises, upon the part of appellees, that the house would have been destroyed in like manner as it was if the title had not been transferred by McMannen, and the alleged facts of the

Insurance Company of North America *v.* Martin *et al.*

prudence upon .the part of appellee Martin, and the precaution which was exercised to prevent the fire, are futile; for, as heretofore said, at the time of the fire neither his grantor nor himself had any existing interests or rights under the policy.

We have examined the authorities cited by counsel for appellees, upon which they rely to support their contention, among which is the case of the *Traders' Insurance Co.* v. *Race*, 142 Ill. 338, 31 N. E. 392. Neither this latter case, nor the others cited by appellee's counsel, under the facts in the case at bar, have any application in support of their contention.

In regard to the question of limitation, which the learned .counsel. for appellant and appellees have so fully discussed, it may be said that by the express provisions of the principal note it was to mature on January 1, 1890. While it is true, as appellees contend, upon default in payment of interest, etc., the mortgage empowered the mortgagee to exercise at its option the right to declare the entire debt due, and proceed, if it desired, to foreclose the mortgage, still that right would not start the running of the statute of limitations as against the principal note, prior to its actual maturity, by reason of the default in payment of any interest note. The fact that appellant was subrogated *pro tanto* to the rights of the mortgagee would not alter the rule in this respect, and the statute, as against the principal debt in the hands of appellant, under the facts at least, would not begin to run until January 1, 1890, the date of its maturity. The following decisions support this conclusion: *White* v. *Miller*, 47 Ind. 389; *Ross* v. *Menefee*, 125 Ind. 432. This action was commenced within six years from that date, therefore the decision upon the debatable question as to whether the six or ten

years' provisions of the statute of limitations applied, is not material.

In answer to the insistence of appellees that the complaint does not disclose that appellant denied its liability to the mortgagor or owner of the property at the time it paid the loss to the mortgagee, it may be said that it is true, as the authorities affirm, that appellant was not entitled to subrogation upon its mere denial of liability, but to entitle it to this right the facts in the case must justify such a denial. It does appear, however, from the averments of the complaint, that after the fire in question the mortgagee, under the policy, demanded of appellant payment for the loss of the house, and that the latter, in accordance with the policy and the provisions of the mortgage clause, paid said loss to the former and took from it an assignment of the debt and mortgage lien, to the extent of the amount paid. These facts, we think, sufficiently show a denial of liability by appellant to the mortgagor or owner of the property.

Without further extending this opinion, we think the court erred in holding the seventh paragraph of the answer sufficient in bar of the action. Appellant's right to prevail in this action may be said more properly to rest on the first and second paragraphs of the complaint, and as the eleventh paragraph of the answer is, in substance, similar to the seventh, as a defense therefor to the cause of action, as alleged in the first and second paragraphs of the complaint, it is open to the same objections as is the seventh paragraph of the answer. The judgment is reversed, and the cause remanded, with instructions to the court to vacate its judgment, and for further proceedings not inconsistent with this opinion.