LOUIS BARTLING, Appellant, v. GERMAN MUTUAL LIGHTNING & TORNADO INSURANCE COMPANY OF THE FARMERS OF MAXFIELD AND VICINITY, Appellees.

**Insurance:** VENDOR AND VENDEE: INSURABLE INTEREST. Where the owner of property transfers the legal title to one in trust for the purchaser, has received his full consideration and the transfer

has been recorded so that it can not be set aside, he no longer has an insurable interest in the property and can not recover on a policy held by him at the time of the transfer but not assigned to the purchaser.

**Same:** ASSIGNMENT OF POLICY: CONSENT OF COMPANY. An insurance
2  policy in a mutual company is a personal contract and can not be assigned before loss without the consent of the company.

**Same:** STATUTES. The statute relating to the assignment of written
3  contracts does not refer to personal contracts, such as a policy of insurance.

**Same:** PAYMENT: SUBROGATION. Where a party is entitled to recover
4  on a policy of insurance because of some unsatisfied obligation on the part of a purchaser of the property, existing at the time of the loss, on payment to him the company is entitled to subrogation to his rights against the purchaser; but in this case no such rights in favor of the vendor existed.

*Appeal from Bremer District Court.*—HON. CLIFFORD P. SMITH, Judge.

THURSDAY, MARCH 7, 1912.

ACTION on a policy of insurance issued by a farmers' mutual company. By agreement it was tried in equity. There was a decree dismissing the petition. Plaintiff appealed.—*Affirmed.*

*Sager & Sweet,* for appellant.

*Hagemann & Farwell,* for appellee.

DEEMER, J.—This action is upon an insurance policy covering a barn which was destroyed by fire on April 23, 1906. Defendant company is a mutual association composed of farmers, and the policy issued by it has none of the usual forfeiture clauses. It is claimed, however, that at the time of the fire plaintiff had no insurable interest in the property destroyed; that the policy is one of indem-

nity; and that plaintiff suffered no loss by reason of the fire.    The trial court, after hearing the testimony, found for the defendant, and plaintiff appeals.    The questions presented are largely of fact, and the underlying one is this, Did plaintiff have an insurable interest in the property at the time of the fire?

The policy was issued June 19, 1901, and continued for the period of five years.    By its terms, it covered loss or damage by fire to the amount of $700 upon the barn in question, which was described as situated upon a certain section of land in Jackson, Bremer county.    The oral testimony identifies the barn as one situated upon a certain one hundred and ten acres of land in Bremer county, owned, at the time the policy was issued, by the plaintiff in this suit.    It appears, however, that in November of the year 1905 plaintiff entered into an oral agreement with one Wamsley, whereby he undertook to convey the land to Wamsley in exchange for certain real estate owned by Wamsley and $750 in cash.    By the terms of this exchange plaintiff's farm was valued at $7,700; but it was incumbered at that time by two mortgages, one of $1,400 and another of $70, and Wamsley's property, which consisted of certain lots in the city of Waverly upon which there was a livery barn, was taken at a valuation of approximately $6,000.    This property was covered by a mortgage of $2,000, and Bartling was to assume but $1,500 thereof. Each party agreed to give good title to his property, save as to the incumbrances mentioned.    From this point on, the record is in some confusion; but, as we understand it, Bartling and wife, on November 3, 1905, executed a warranty deed of the one hundred and ten acres of land to one C. H. Ilgenfritz, which deed was made subject to the two mortgages mentioned, and on the same day Wamsley and wife executed a warranty deed to the property upon which the livery barn stood to the plaintiff, subject to a mortgage of $2,000 held by the First National Bank of Waver-

ly, $1,500 of which the grantee, Bartling, assumed and agreed to pay. This. $2,000 mortgage also covered other property, described as follows: "Lots three (3) and four (4) block seventy-six (76) of southwest quarter (¼) of northeast quarter (¼) of section three (3), twp. 91, range 14, except south ½ rod in width reserved for alley, being same land as originally platted as lots 7, 8, 9, 10, 11 and 12, block 76, Harmon & Le Valley's addition to Waverly, Iowa. Also lots 8, 9 and 10 in block 101, Harmon & Le Valley's addition to Waverly, Iowa."

Wamsley purchased the property which he conveyed to plaintiff with other property from one Gillett, and in the deed conveying the same, there was this reservation: "Provided, however, that grantors herein expressly reserve their vendors' lien on and against the above-described property for unpaid purchase money, on this conveyance."

Wamsley and wife had also given a second mortgage to Gillett covering the lots they had purchased from Gillett, but not upon the lot traded to plaintiff, Bartling. This mortgage was to secure the sum of $818.86. Bartling deeded his land upon which the barn was located to Ilgenfritz, pursuant to the following arrangement: Wamsley did not have the boot money which he was to pay Bartling on the trade, and he arranged with Ilgenfritz to furnish it and also agreed to make him some other advancements, provided the deed was made directly from Bartling to him Ilgenfritz then made a written contract with Wamsley to deed him the land when these advancements were repaid. The reservation of the vendor's lien to the Gilletts upon the property conveyed to Bartling being a cloud upon the title, the papers, so far referred to, were delivered to a lawyer in escrow until the matter was fully cleared up. However, Bartling received his $750 in cash, and Wamsley went into possession of the Bartling land March 1, 1906, as agreed. Wamsley undertook to get the vendor's lien released, but could not do so, and it was then agreed that Bartling should

take the other two lots which Wamsley had purchased from Gillett, and, as the record says, "turn back to me the note on those lots that I had given of $818." As a matter of fact, it was agreed between Bartling, Wamsley, and Gillett that the Gilletts would release their vendor's lien upon the lot on which the livery barn was standing, which Wamsley had conveyed to Bartling, upon condition that the Wamsleys, husband and wife, would convey the other lots sold by them to Wamsley and Albert and L. S. Gillett, and pursuant thereto Wamsley and wife did convey the same to the Gilletts on March 1, 1907, and the Gilletts returned the note and mortgage for the $818 to Wamsley.

The second agreement to which we have referred, whereby Bartling agreed to take the other lots from the Gilletts, in order to get the vendor's lien on the livery barn property released, was made January 2, 1906, and as a part of that transaction Bartling agreed to pay $300 more of the bank mortgage of $2,000 or $1,800 in all. As a matter of fact, the vendor's lien on the livery barn property was released of record January 2, 1906, and, so far as that property was concerned, there was no cloud upon it, save, perhaps, the balance of the $2,000 mortgage to the First National Bank, which balance was reduced by agreement to $200. There was a policy of insurance on the livery barn which Wamsley conveyed to Bartling, and it was agreed that this policy should be assigned to Bartling, and it was also agreed that plaintiff's policy upon the barn on the one hundred and ten acres of land should be transferred to Wamsley. Although the record is in some confusion, we think it shows that all the deeds and releases, save, perhaps, the deed from Wamsley and wife to the Gilletts, were recorded January 2, 1906, and all dealings between the parties were then closed, save the matter with reference to the deeding of the lots not included in the original transaction by Wamsley to the Gilletts and the return of the Wamsley note and mortgage for

the $818. These latter could not then be returned, because the Gilletts had deposited them as collateral security for a loan, and it is claimed they did not get them released until some time in March of the year 1907. However, an agreement had been reached before the fire, whereby Wamsley was to redeem the lots not covered in the original transaction between plaintiff and Wamsley to the Gilletts, and was to receive back from them the note and mortgage·which he had given for the $818. None of these matters are in serious dispute, although the record is in such a confused shape that we have had much difficulty in ascertaining the true situation, and the question is, Did plaintiff, at the time of the fire, have any interest whatever in the property destroyed? In other words, did he have such an interest therein that he could have secured a policy of insurance thereon?

It is manifest that he did not have the legal title; for that had been transferred to Ilgenfritz, who held it as security for a loan made to Wamsley. This deed was re-

1. INSURANCE: vendor and vendee: insurable interest. corded not later than January 2, 1906, and Bartling could not have had the same set aside. He had parted with the legal title, and had secured all that was coming to him, to wit, a deed for the livery barn property free of the vendor's lien held by the Gilletts, but subject to the $2,000 mortgage, $1,800 of which he had assumed and agreed to pay. He was no longer interested in the other lots conveyed by the Gilletts to Wamsley; for Wamsley had agreed to redeem them to the Gilletts, and was to receive back the note and mortgage given by them. The Gilletts also profited by the transaction; for the $2,000 note and mortgage, given to the First National Bank, also covered these other lots, and Bartling agreed to pay $300 more of this incumbrance than he had originally agreed to do. Before the fire, Bartling had, however, secured everything which was coming to him under any of the agreements; but at the time of the fire the

matter was still pending as between the Gilletts and Wamsley. Singularly enough, Bartling was not a witness upon the trial; but Wamsley testified regarding the insurance upon the barn substantially as follows: "I suppose this is really my suit. If it wins out, I am to have this money. It is brought in Mr. Bartling's name. The policy is in his name. It was brought in his name because the policy had not been transferred; but it is for my benefit." Ilgenfritz also testified that he received the deed made by plaintiff on January 2, 1906, so that it was no longer in escrow.

The whole difficulty seems to be that when this deal as between Bartling, Wamsley, and Ilgenfritz was closed, which was not later than January 2, 1906, and all the papers, save, perhaps, the deed from Wamsley to the Gilletts, had been delivered and recorded, all the parties neglected or forgot to have Bartling's policy of insurance transferred either to Wamsley or Ilgenfritz. Under the facts, it is clear that plaintiff, at the time of the fire, had no lien upon, claim to, right or interest in, the property which he had conveyed to Ilgenfritz, pursuant to the arrangement with Wamsley. This latter deal was perfected, it is true, after the fire; but at the time the fire occurred the only thing not closed was Bartling's agreement to take a deed to the Gillett lots, not included in the original transaction, from Wamsley, and return or secure the return to him of the $818 note. In virtue of this arrangement and of the agreement with the Gilletts, plaintiff secured the very property which he had traded for, released of the vendor's lien, and Wamsley was under no further obligation to him, save to deed the other lots to whomsoever Bartling might direct upon securing the return of the Wamsley note to the Gilletts for the $818. Nothing could have transpired after the fire which would have justified Bartling in rescinding his contracts, and as he had received full value for his property he suffered no loss by the destruction of the barn. Fundamentally a contract of insur-

ance is one of indemnity only, and if the policyholder has no insurable interest, or suffers no loss, he is not entitled to recover. *Aetna Ins. Co. v. Tyler,* 16 Wend. (N. Y.) 385 (30 Am. Dec. 94); *Davidson v. Insurance Co.,* 71 Iowa, 532; *Chickasaw Co. v. Weller,* 98 Iowa, 731.

Of course, if plaintiff, at the time of the fire, had either a legal or equitable lien upon the property conveyed, or some claim thereto which would be recognized in a court of chancery, he might, perhaps under our statutes, bring a suit in his own name to recover the amount of his insurance, and the action doubtless might be continued in his name, for the benefit of his vendee, even after payment to the plaintiff of the amount of his charge against or lien upon the land. After loss, a policy of insurance may be assigned, and, under our statute, if the assignment be after action brought the suit may be continued in the name of the assignee. See Code, section 3476, and cases cited.

But it is fundamental that an insurance policy can not be assigned by the assured, before loss, to a stranger without the consent of insurer, for the plain reason that the company issuing the policy has the right to say whom it will insure. *Simeral v. Insurance Co.,* 18 Iowa, 319-322; *Carpenter v. Insurance Co.,* 16 Pet. 506 (10 L. Ed. 1044). A policy of insurance, especially in a mutual company, is a personal contract, and it can not be assigned without the assent of the company issuing it. See 2 Cooley's Briefs on Insurance, 1066, and cases cited.

*2. Same: assignment of policy: consent of company.*

Section 3046 of the Code, permitting the assignment of written instruments, does not refer to personal contracts. See *Crocker v. Hogin,* 103 Iowa, 243; *Mershon v. Insurance Co.,* 34 Iowa, 87; *Simeral v. Insurance Co., supra.* At any rate, there was no assignment, either before or after loss, and none after suit brought.

*3. Same: statutes.*

None of the cases cited and relied upon by appellant are applicable to the facts here shown. In each and all of them, the insured had title to, a lien upon, possession of, or some special or limited interest in, the property, and the testimony showed that he suffered or would suffer some loss from the destruction of the property. Of these cases are *Schaeffer v. Insurance Co.*, 113 Iowa, 652; *Swank v. Insurance Co.*, 126 Iowa, 547, and the cases therein cited; *Evans v. Insurance Co.*, 130 Wis. 189 (109 N. W. 952, 9 L. R. A. (N. S.) 485, 118 Am. St. Rep. 1009). Our conclusions find support in the following, among other, cases: *Ayres v. Insurance Co.*, 17 Iowa, 183; *Insurance Co. v. Martin*, 151 Ind. 209 (51 N. E. 361); *Mahoney v. Insurance Co.*, 133 Iowa, 570.

Under the record, it would be quite impossible to say that Bartling had any interest in the property conveyed by him to Wamsley or Ilgenfritz, or to fix in any way the value of his supposed interest, even should we concede that the trade was in some respects incomplete by reason of the collateral agreements between Bartling and Wamsley with reference to the remaining Gillett lots. If Bartling is entitled to recover because of some unsatisfied obligation on the part of Wamsley, then the insurance company is entitled to be subrogated to whatever rights plaintiff had against Wamsley. And it is pertinent to inquire at this stage, What rights did Bartling have against Wamsley to which the insurance company might be subrogated? Manifestly none under the record before us.

4. SAME: payment: subrogation.

It follows that under no theory is plaintiff entitled to recover, and the decree must be, and it is *affirmed.*