THE CHICKASAW COUNTY FARMERS' MUTUAL FIRE INSURANCE COMPANY v. L. H. WELLER, Appellant.

98    731
129   635

**Receiving Payment Made:** CONCEALMENT. Payment by a fire insurance company of a claim for property destroyed by the negligence of a railroad company, is not voluntary, and may be recovered back, where the insured had previously made a settlement with the railroad company, receiving payment in full, which fact he concealed from the insurance company, although the latter knew that he was making a claim against the railroad company.

**SUBROGATION:** *Insurance.* One who has been paid by a railroad company, the full value of property destroyed by its negligence, cannot recover insurance on such property, as the insurance company would be entitled to be subrogated to the rights of the insured to recover from the railroad company.

**Witness Fees:** APPEARANCE OF A PARTY TO SUIT. The president and secretary of a corporation are not parties to an action brought by the corporation so as to dis-entitle them to fees as witnesses in its behalf.

*Appeal from Chickasaw District Court.*—HON. L. E. FELLOWS, Judge.

THURSDAY, OCTOBER 8, 1896.

ACTION at law to recover one hundred and ten dollars, with interest, alleged to have been fraudulently obtained by the defendant from the plaintiff. The issues and facts appear in the opinion. The case was tried to the court, a finding of law and of facts made, and a judgment entered thereon for the plaintiff. Defendant appeals.—*Affirmed.*

*William B. Perrin* for appellant.

*F. F. Swale* for appellee.

GIVEN, J.—I. The learned district judge made the following findings of fact and of law, and we think the findings of facts are fully sustained by the evidence: "After the evidence and arguments of counsel were concluded, the following findings of fact and law were made by the court, to-wit: That plaintiff, the Chickasaw County Farmers' Mutual Fire Insurance Company, a corporation duly organized under the laws of Iowa, issued to the defendant an insurance policy in the year 1875, which policy has remained in full force from the time it was issued down to the date of the commencement of this action; that on or about the tenth day of September, 1893, some stacks of hay covered by the insurance company, with the insurance policy thus issued to the defendant, were burned, and the defendant sustained a loss thereby, for which the plaintiff was liable under this policy; that both the plaintiff and the defendant claim, and have claimed in attempting to adjust the loss, that the loss was occasioned through the negligence of the Chicago, Great Western Railway Company, and that the Chicago, Great Western Railway Company was ultimately liable for the payment of the loss; that on or about the nineteenth day of March, 1894, the defendant, having made a claim against the said railway company for the loss of the hay in question, made a settlement with that company, and on the twenty-fourth day of March, 1894, received full payment of said railway company for the loss thus sustained; that on the same day that the settlement was made with the railway company, the defendant notified the plaintiff that he was ready to receive and receipt for one hundred and ten dollars from that company in payment of the same loss, this being the amount that had been agreed upon between him and the insurance company as the amount to be paid by the company

for the loss; that the defendant, in thus notifying the plaintiff, did not notify the plaintiff that he had made a settlement of the same claim with the railway company, and that the insurance company or its officers had no notice that the railway company had thus settled and paid the loss to the defendant; that on the twelfth day of April, 1894, and without any knowledge or notice that the loss had been adjusted by the railway company with the defendant, the plaintiff paid the defendant said sum of $110, and took his receipt therefor; that the plaintiff in this action claimed, during all the negotiations for settlement, and the defendant knew that the plaintiff claimed, that if it paid the loss to him under the policy issued to him, it was the insurance company's right to recover back the amount thus paid, if it could, from the railway company. As a conclusion based upon these facts, I find that the settlement made by the railway company with the defendant, extinguished his claim, both as against the railway company and the insurance company, and in receiving money from the insurance company, after having received it from the railway company, and without giving the insurance company notice of the fact that he had thus received the money, he received the money wrongfully, and is liable to refund the money to the company, and that the plaintiff is entitled to judgment against him for it in this action; and judgment will be entered accordingly, with interest at six per cent. from the eleventh day of April."

II.   There is no question in this case but that the defendant was entitled to full compensation from the railway company for the loss sustained by him in consequence of the fire set out by that company. Neither is it questioned but that he was entitled to full indemnity under his contract of insurance, not exceeding the amount of the insurance, from the

plaintiff. One contention is whether he was entitled to full compensation from the railway company, and also from the plaintiff. This contract of insurance, is a contract of indemnity, by which the plaintiff agreed to indemnify the defendant against loss or damages to the insured property by fire or lightning, not exceeding the amount of the insurance. The law is well settled, that in cases like this, the insurer, upon payment of the loss, is subrogated to all the rights of the insured against the person whose fault or negligence caused the loss. "If insured buildings or other property be destroyed through the negligence of some person other than the owner, the insurance company, upon the payment of the loss, will be subrogated to the right of the owner to recover from the wrongdoer. The insured cannot bar the insurer's right of action by executing a release of damages to the wrongdoer, though he may release the wrongdoer from all claim for injuries not covered by the policy without impairing his rights against the underwriter. If he obtains satisfaction from the wrongdoer, having previously received payment of the loss from the insurer, he must account therefor to the latter." 24 Am. & Eng. Enc. Law, 306, 308, and 310, cases cited. Under these recognized principles of law, it is clear, that upon payment of the loss, the plaintiff would have been subrogated to all the rights of the defendant against the railway company, and that the defendant could not defeat that right of subrogation by releasing the railway company. Appellant instances the case of one who has insurance upon his life, and is killed by the negligence of the employes of a railway company, and contends, that because the estate has a claim for damages against the railroad company, it does not excuse the insurance company from liability. He cites 24 Am. & Eng. Enc. Law 319. It is there "A contract of life insurance is not a contract of

indemnity, and the insurer who pays a loss under such a contract, is not entitled to be subrogated to any rights which the personal representative of the deceased may have against other persons." The same is true as to the other instance given by appellant, of one who purchased a horse, with the special warranty that it is not timid, and will not shy in crossing bridges, and afterward the horse does shy, and falls from a bridge, and is drowned, for want of sufficient guards on the bridge. In such a case the contract of warranty is not one of indemnity, merely. We think it entirely clear, under the law, that defendant was not entitled to recover for the loss of hay in stack, from both of these parties.

III. Defendant was entitled to full compensation for the loss sustained. His claim against the railway company was for damages to his meadow and fence posts, in addition to the loss of the hay; and he contends that he only received part compensation from the railway company, and that the amounts received from both companies do not exceed the actual loss. In his settlement with the railway company, the hay was estimated separately, and the defendant was compensated to the full value thereof. Defendant contends that plaintiff knew he was claiming payment from the railway company, and that the payment made by the plaintiff to him was a voluntary payment, and cannot be recovered back. Let it be conceded that the plaintiff did know that the defendant was making a claim against the railway company. It is entirely clear that at the time of demanding and receiving payment from the plaintiff, defendant concealed the fact that he had made a settlement with the railway company, and had received payment from that company. "When one pays money in ignorance of circumstances with which the receiver is acquainted, but does not disclose, and which, if disclosed, would

have avoided the payment, the receiver acts fraudulently, and the money may be recovered back." 8 Am. & Eng. Enc. Law, 645. There can be no doubt that had the facts been disclosed by the defendant, as it was his duty to do, the plaintiff would not have made this payment. Therefore it is not a voluntary payment, but one obtained by fraud; and may be recovered back.

IV. J. F. Babcock, president, and C. H. Heath, secretary, of plaintiff company, were examined as witnesses, and fees taxed accordingly. Appellant moved to retax the costs, and to disallow these fees, upon the theory that these witnesses were parties to the action, and not entitled to fees. They were not parties to the action, and there was no error in overruling the motion.

Other errors are assigned, some of which are barely mentioned in argument, and others not noticed. These we are not required to consider. We find no error prejudicial to appellant, and the judgment of the district court is therefore AFFIRMED.