DANTZLER LUMBER & EXPORT CO., L. N. DANTZLER, JR., and ALVIN C. ERNST, LESTER W. BLYTH, HARRY C. ROYAL, and FORREST H. FIGSBY, co-partners doing business under the firm name of Ernst & Ernst, v. COLUMBIA CASUALTY CO.

156 So. 116.

Division B.

Opinion Filed June 21, 1934.

Petition for Rehearing Denied July 31, 1934.

*Kenneth I. McKay* and *McKay, Withers & Ramsey*, for Appellants;

*William C. Brooker,* for Appellee.

BUFORD, J.—We adopt the statement of the case as presented by counsel for the respective parties.

The appellee, Columbia Casualty Company, filed bill of complaint against the appellants, Dantzler Lumber & Export Company, a Florida corporation, L. N. Dantzler, Jr., and

Alvin ·C. Ernst, Lester W. Blyth, Harry C. Royal ·and Forrest H. Figsby, co-partners doing business under the firm name of Ernst & Ernst.

. Summarized, the bill of complaint alleged:

(a) That the Columbia Casualty Company is a corporation organized under the laws of the State of New York, and authorized to do business in the State of Florida, as a surety company for compensation.

. (b) That Dantzler Lumber & Export Company is a corporation organized under the laws of Florida, engaged in the lumber export business at Tampa, Hillsborough County, Florida.

(c) That L. N. Dantzler, Jr., is vice-president and treasurer of Dantzler Lumber & Export Company, and resides at Tampa, Hillsborough County, Florida.

(d) That Ernst & Ernst is a co-partnership composed of the persons named in the bill, all of the members of the co-partnership being non-residents of the State of Florida, said co-partnership being engaged in business as public accountants and maintaining an office in the State of Florida.

(e) That Ernst & Ernst contracted with Dantzler Lumber & Export Company to make annual audits of books and accounts of said company, and did make audits of said books and accounts for the period from September 20, 1926, to August 7, 1931, and reported said audits of the books and accounts to said Dantzler Lumber & Export Company, said audits being made at or near the end of each calendar year, and that said audits were made by auditors or accountants in the employ of said Ernst & Ernst, and that said auditors were unrestricted in making and reporting said annual audits, and were required to make complete and detailed audits and reports, and were under agreement with said Dantzler Lumber & Export Company to make examination.

of all cash transactions for the period covered by each audit, including inspection of vouchers and other supporting data.

(f) That one W. Frank Alderman was employed as bookkeeper by Dantzler Lumber & Export Company during the period above mentioned, and that said Alderman, by means of issuing certain checks against the bank accounts of said Dantzler Lumber & Export Company fraudulently obtained possession of and embezzled moneys of said Dantzler Lumber & Export Company to the aggregate amount of $39,425.61; that of said sum $1,670.09 was embezzled during the year 1927, $4,716.62 in the year 1928, $15,670.70 in the year 1929, $8,693.20 in the year 1930 and $8,675.00 in the year 1931.

(g) That said Ernst & Ernst was negligent and careless in making its audits of the books and accounts of said Dantzler Lumber & Export Company, and that by the exercise of due care, caution and vigilance, as they were in duty bound to do, they would have discovered the embezzlement; that it was the duty of said auditors, pursuant to their contract of employment, to examine every cash transaction and to investigate supporting data, and that had said auditors, in making said audits, examined the cash transactions wherein the cash above mentioned was withdrawn by said Alderman by the checks above mentioned, with due care and accuracy required of auditors, and pursuant to their contract of employment, the embezzlement committed by Alderman would have been discovered at the time of the audit in 1927, which would have terminated the said embezzlements and resulted in a loss of only $1,670.09, which was the amount of the embezzlement committed by said Alderman prior to the 1927 audit, but that through the failure of said Ernst & Ernst to use due care and vigilance, and to properly perform their contract to examine all cash

transactions and supporting data and report the same in their annual audits, the same embezzlements committed by the said Alderman were not discovered and were permitted to continue until August, 1931, during which time the amount of the embezzlements so committed by the said Alderman aggregated the sum of $39,425.61.

(h) It is further alleged in the bill that in each report of the audit of the books and accounts of Dantzler Lumber & Export Company by Ernst & Ernst commencing the year 1927 and continuing through succeeding years including 1930, it was certified by the auditors that "all record cash receipts for the year under review were traced directly into the bank deposits and disbursements through the bank account were verified by an examination of said checks, invoices or other supporting data on file." It is alleged that had the auditors compared the checks with the invoices and other supporting data, it would have been found that Alderman was wrongfully and fraudulently withdrawing the money from his employer, Dantzler Lumber & Export Company, from the bank account on checks made payable to "Yourselves" and that said checks were cashed by the paying teller of the bank; that a careful, reasonable and intelligent audit of said accounts and the tracing of said checks would have disclosed that there was no supporting data for them and that they were not connected with any business transactions of Dantzler Lumber & Export Company; that Dantzler Lumber & Export Company relied upon the accuracy of said auditors' reports and believed them to have been made in good faith as stated therein; that had the auditors, Ernst & Ernst, made the examination it reported to Dantzler Lumber Company it had made the defalcation of Alderman would have been discovered, Alderman would have been discharged and further loss obviated. And it is alleged that

by and through the fraud of Ernst & Ernst the Dantzler Lumber & Export Company sustained losses in the approximate sum of $37,755.52 in excess of that occurring prior to the time of the first audit in 1927 when the defalcation should have been discovered and disclosed.

(i)   That the Columbia Casualty Company had executed a surety bond in the sum of $10,000.00, payable to said Dantzler Lumber & Export Company, protecting said Dantzler Lumber & Export Company against loss through embezzlements by certain of its employees, including the said Alderman, and that in accordance with the terms of its bond, for the making of which it received an annual premium of $75.00 from Dantzler Lumber & Export Company, it responded to its said liability and paid the full penalty of said bond, to-wit, the sum of $10,000.00, to said Dantzler Lumber & Export Company, whereas if the said embezzlements had been discovered by said auditors at the end of the year 1927, as the bill charges should have been done if said auditors had exercised due diligence and had not been careless in the performance of their contract, the liability of said Columbia Casualty Company on its bond would have been limited to said sum of $1,670.09, being the total of the embezzlements committed by the said Alderman up to that time.

(j)   That at the time of making payment of the amount of its bond to Dantzler Lumber & Export Company, it notified said Dantzler Lumber & Export Company and said Ernst & Ernst that it made claim against said Ernst & Ernst for reimbursement to it of loss so sustained by it, and that it would claim to be subrogated to the rights of Dantzler Lumber & Export Company to the extent of the payment so made by it against said Ernst & Ernst, and warned said Dantzler Lumber & Export Company and said Ernst &

Ernst against making any settlement between themselves without taking into consideration and providing for reimbursement to said Columbia Casualty Company for its said loss.

(k) The bill further alleges that disregarding the notices so given, said Dantzler Lumber & Export Company and Ernst & Ernst settled and adjusted the claim which Dantzler Lumber & Export Company made against Ernst & Ernst for a sum of money unknown to Columbia Casualty Company, but that said settlement was made by way of compromise for less than the total claim, and that Dantzler Lumber & Export Company and Ernst & Ernst have refused to disclose to Columbia Casualty Company the nature and terms of said settlement and the amount of money paid in settlement of said claim.

The bill prays that Dantzler Lumber & Export Company and L. N. Dantzler, Jr., be required to make answer to certain interrogatories propounded by the bill, and disclose whether or not settlement of the claim of Dantzler Lumber & Export Company against Ernst & Ernst was made, and if so, the amount of the settlement. Certain other interrogatories are propounded by the bill which are not of material importance on this appeal.

The bill prayed that Columbia Casualty Company be decreed to be subrogated to the rights and claims of Dantzler Lumber & Export Company against Ernst & Ernst as to all liability of Ernst & Ernst to Dantzler Lumber & Export Company on account of the loss sustained by reason of the alleged neglect of Ernst & Ernst as set forth in the bill to the extent of the loss sustained by Columbia Casualty Company and that the persons constituting the co-partnership of Ernst & Ernst be decreed to pay to Columbia Casualty Com-

pany such sums as might be found to be due upon an accounting.

The defendants in the court below filed motion to dismiss. The motion was overruled and appeal was entered.

Appellants have filed their assignments in error, being four in number. The assignments of error present for our determination two questions: First, did the bill of complaint set forth a statement of facts showing liability of the appellant co-partnership Ernst & Ernst to the appellant Dantzler Lumber & Export Company? If that question is answered in the affirmative, the second question is, "Did the bill show a right in the appellee Columbia Casualty Company to subrogate *pro tanto* to the rights of Dantzler Lumber & Export Company against Ernst & Ernst?" If this question is also answered in the affirmative, then the order appealed from should be affirmed.

The allegations of the bill are sufficient to show that the firm of Ernst & Ernst carried on a business in the State of Florida of accounting and auditing; that as such accountants and auditors they undertook to make annual audits of the books and accounts of Dantzler Lumber & Export Company and in pursuance of such undertaking they made an audit of the books and accounts of that corporation from 1927 until 1930, inclusive. It alleges that a careful and proper audit of the books and accounts would have shown that Alderman embezzled $1,670.09 in 1927, $4,716.62 in 1928, $15,670.70 in 1929, $8,693.20 in 1930 and $8,675.00 in 1931.

The allegations are sufficient to show that Ernst & Ernst negligently and fraudulently misrepresented the financial condition of the business and the status of the accounts of Dantzler Lumber & Export Company in each and every of the reports of audits made. Public accountants and

auditors hold themselves out to be skilled and competent to perform the duties and services which they undertake to perform as accountants' and auditors and they are bound in law to perform such services in an accurate and skillful manner. When auditors and accountants are employed for the purpose of auditing books and accounts they occupy a relation of trust and confidence to their employer based upon the superior knowledge of the business of accounting and auditing possessed by the auditors and accountants.

The bill of complaint presents a case of gross negligence if not of legal fraud on the part of the accountants in the performance of their services. It alleges a loss by reason of such negligence and, therefore, the right of action *ex delicto,* notwithstanding the injury complained of, might also be ground for action *ex contractu.* The action here is not for mere non-performance, but it is based upon an alleged breach of duty to skilfully perform and truly report the condition of accounts in reporting a condition which did not in truth and in fact exist and the true status of which could and would have been discovered and disclosed by a careful, skilfull and proper audit of the books of account.

In 26 R. C. L. 758, it is said:

"Whenever a negligent breach of a contract is also a violation of a common-law duty, an action *ex delicto* will lie. Accompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. If the transaction complained of had its origin in a contract which placed the parties in such a relation that in attempting to perform the promised service the tort was committed, then the breach of the contract is not the gravamen of the suit. The contract in such case is

mere inducement, creating the state of things which furnishes the occasion of the tort. And in all such cases the remedy is an action on the case. Based on the principle above indicated, the firmly established rule is that for injuries resulting from unskilful or otherwise negligent performance of a thing agreed to be done, an action *ex delicto* will lie, notwithstanding the act complained of would also be ground for an action *ex contractu.*"

In 45 C. J. 1093, it is said:

"In an action *ex delicto* for negligence in the performance of a contract, the fact of negligence must be alleged as in other cases of negligence, and an allegation only of a breach of a contractual duty is not sufficient, although it describes such breach as negligence. As an element of such allegation facts should be averred to show the contractual relation between the parties and the consequent duty owing by defendant to plaintiff; and, when necessary for this purpose the contract out of which such duty and the consequent negligence arose should be stated, although it is not necessary to allege the terms of the contract in detail."

In Smith, *et al.,* v. London Assurance Corporation, 96 N. Y. 820, the Court held:

"Where public accountants were employed on the express agreement that they should frequently check the defendant's cash account in one branch of its business and verify the items thereon, and they negligently and willfully failed to do so, and on account of such failure its cashier was enabled to embezzle amounts of money, they were liable for the sums embezzled."

In Banfield, *et ux.,* v. Addington, *et ux.,* 104 Fla. 661, 146 Sou. 893, we quoted with approval from Mobile Life Ins. Co. v. Randall, 74 Ala. 170, saying:

"Wherever there is carelessness, recklessness, want of

reasonable skill, or the violation or disregard of a duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, an action on the case lies in favor of the party injured; and if the transaction had its origin in a contract, which places the parties in such relation as that, in performing or attempting to perform the services promised, the tort or wrong is committed, then the breach of the contract is not *gravamen* of the suit. There may be no technical breach of the letter of the contract. The contract, in such case, is mere inducement, and should be so stated in pleading. It induces, causes, creates the conditions or state of things, which furnishes the occasion of the tort. The wrongful act outside of the letter of the contract, is the *gravamen* of the complaint; and in all such cases the remedy is an action on the case."

In that same opinion, we also said:

"The reason for this is the firmly established rule that for injuries resulting from the unskillful or otherwise negligent performance of a thing agreed to be done, an action *ex delicto* will lie, notwithstanding the injury complained of would also be ground for an action *ex contractu*. In such cases the distinction made is that the action *ex delicto* can be maintained where the action is founded on something more than mere nonfeasance in the performance of an alleged contract."

Numerous cases are there cited to support this enunciation which is known as the American Rule, as distinguished from the English Rule which prevails in some jurisdictions.

We, therefore, answer the first question in the affirmative. As to the nature and doctrine of subrogation, in 25 R. C. L. 1313, it is said:

"The doctrine of subrogation is generally considered to have been derived, and the term itself borrowed, from the

civil law, though some authorities regard the Roman law as its source. However this may be, it has long been an established branch of equity jurisprudence. It does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine, therefore, which will be applied or not according to the dictates of equity and good conscience, and considerations of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate, securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principle of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expression of the rule has so nearly covered the field that it may now be said that, wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded."

Our Court is committed to a liberal application of the rule of equitable subrogation. See Federal Land Bank v. Dekle, 108 Fla. 555, 148 Sou. 56, and cases there cited.

In 25 R. C. L. 1316, it is said:

"Subrogation is a consequence which equity jurisprudence attaches to certain conditions. The parties may not have contracted for it either expressly or by legal implication; but if, in the performance of that contract which they did make, certain conditions have resulted which make it neces-

sary for equity to interpose its authority in this respect, it will do so, provided that in so doing it will violate no law and not alter the contract. It is accordingly the universal rule that the right of legal subrogation need not rest upon any formal contract or written agreement, nor does it follow from any fixed law; but it exists on principles of mere equity and benevolence, and is founded on the relationship of the parties."

In the same volume, page 1372, it is said:

"One who has indemnified another in pursuance of his obligation so to do succeeds to, and is entitled to, a cession of all the means of redress held by the party indemnified against the party who has occasioned the loss. Thus the rule is well settled in fire insurance as well as in marine insurance, that the insurer, upon paying to the assured the amount of a loss on the property insured, is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss; this right of the insurer against such other person not resting upon any relation of contract or of privity between them, but arising out of the nature of the contract of insurance as a contract of indemnity, derived from the assured alone, and enforceable in his right only."

To like effect is 33 C. J. 43.

In Chickawa County Farmers Mutual Fire Insurance Co. v. Weller, 98 Iowa 731, 68 N. W. 443, it was held:

"Payment by a fire insurance company of a claim for property destroyed by the negligence of a railroad company is not voluntary, and may be recovered back, where the insured had previously made a settlement with the railroad company receiving payment in full, which fact he concealed from the insurance company, although the latter knew that he was making a claim against the railroad company.

"One who has been paid by a railroad company, the full value of property destroyed by its negligence, cannot recover insurance on such property, as the insurance company would be entitled to be subrogated to the rights of the insured to recover from the railroad company."

In Joyce on Insurance, 2nd Ed., Vol. 5, page 5888, Section 3544, the writer says:

"If third parties who may be liable to the insured for the loss effect a settlement with the latter and obtain a release from all liability, and this is done with knowledge of the fact that the insurers have already paid to the insured the amount of their liability to him, such settlement and release will in no way affect the insurer's right of subrogation as against such third parties, since the settlement and release will be in fraud of the insurer's rights, and consequently void."

In 14 R. C. L. 1404, it is said:

"On payment of a loss the insurer acquires the right to be subrogated *pro tanto* to any right of action which the insured may have against any third person whose wrongful act or negligence caused the loss. This right includes the subrogation of the insurer to any cause of action which the insured has against a carrier whose failure of duty caused the loss, as the carrier is primarily and the insurer only secondarily liable, and the insurer also is subrogated to the property owner's statutory right of recovery against a railroad company for setting out fire by the operation of its road. Likewise an insurer of internal revenue stamps may recover, in the name of the owner, from the government for their loss. The insurer is subrogated only to such rights as the insured possessed, and the right of the insurer against the wrongdoer may be defeated by the act of the insured, prior to the loss or even after the loss, in releasing the

wrongdoer from any liability or giving him the benefit of any insurance, or by a recovery of the amount of the loss by the insured, unless, in the case of a release after loss, the wrongdoer settles with the insured with full knowledge of the insurer's right of subrogation."

To like effect in Cooley's Briefs on Insurance, 2nd Ed., Vol. 7, page 6713.

It, therefore, appears that the allegations of the bill of complaint are sufficient to constitute the basis for a suit to enforce subrogation.

We have examined and considered the argument and authorities cited in brief for plaintiff in error, but we hold that the authorities herein cited enunciate the law as it is in this jurisdiction and, therefore, we answer the second question also in the affirmative.

The contention is made that the appellants have the right to trial by jury as to the rights of parties. The contention is not tenable for the reason that subrogation is a matter of equitable cognizance and, aside from this, the bill of complaint seeks discovery of the terms, amount and condition of the settlement had between the appellants. It was, therefore, necessary for the appellee to seek its relief in a court of equity. The court of equity, having acquired jurisdiction to determine rights cognizable in equity between the parties, it will reach out and draw unto its consideration and determination the entire subject matter bringing before it all the parties interested therein and will retain such jurisdiction until all matters involved in litigation between the parties or growing out of and connected with the subject matter of the suit are fully disposed of. See Hitchcock v. Mortgage Securities Corporation, 95 Fla. 147, 116 Sou. 244, and cases there cited.

In Norris, *et ux.*, v. Eikenberry, 103 Fla. 104, 137 Sou. 128, 130, we said:

"While a court of equity, having once obtained jurisdiction of a cause, will retain it for all purposes and administer complete relief, yet, in order to authorize relief which can be obtained in a suit at law, there must be some substantial ground of equitable jurisdiction both alleged and proven; otherwise a court of equity will not retain jurisdiction and grant a purely legal remedy."

As we have heretofore indicated, "subrogation is a consequence which equity jurisprudence attaches to certain conditions. The parties may not have contracted for it either expressly or by legal implication, but if in the performance of that contract which they did make, certain conditions have resulted which make it necessary for equity to interpose its authority in this respect it will do so." It may be said to be the universal rule "that the right to legal subrogation need not rest upon any formal contract or written agreement, nor does it follow from any fixed law, but it exists on principles of mere equity and benevolence and is founded on relationship of the parties." It, therefore, appears that it was not necessary that there should have been any privity between Columbia Casualty Company and Ernst & Ernst to create the liability of Ernst & Ernst under the principle of equitable subrogation to Columbia Casualty Company. It appears to be also well settled that "the insurer upon paying to the insured the amount of loss, is subrogated in a corresponding amount to the assured's right of action against any other person responsible for the loss." This right of insured against such other person does not rest upon any relation of contract or privity between the insurer and such other person, but it arises out of the nature of the contract of insurance as a contract on indemnity and being derived from

the contract with the insured alone, it is enforceable in his right only. See 25 R. C. L., page 1372, and cases there cited; see also 33 C. J. 43; also Chickasaw County Farms Mutual Fire Ins. Co. v. Weller Co., *supra*, 14 R. C. L. 1404.

Columbia Casualty Company's right to recover rests upon principles of subrogation and only by the enforcement of its right to subrogation may it recover. The matter of enforcing subrogation is of equitable cognizance.

It, therefore, appears that inasmuch as the bill of complaint contains sufficient allegations to show that the complainant in the court below was entitled to an accounting because of funds having been received by Dantzler Lumber & Export Company from Ernst & Ernst and that the bill of complaint also contains sufficient allegations to show that the insurer has the right to be subrogated *pro tanto* to any right of action which the insured may have had against Ernst & Ernst, whose alleged wrongful act of negligence caused the loss, the bill is not without equity.

For the reasons stated, the order appealed from should be affirmed. It is so ordered.

Affirmed.

ELLIS and TERRELL, J. J., concur.

DAVIS, C. J., and WHITFIELD, J., concur in part and dissent in part.

BROWN, J., dissents.

DAVIS, C. J. (concurring in part, dissenting in part).— There was a general motion to dismiss for want of equity in the bill, which was overruled. Since that motion is the equivalent of a general demurrer and there is equity in the bill, in my opinion, at least to the extent of the discovery sought against Dantzler Lumber & Export Company, I con-

cur in the result which is an affirmance of the order from which this appeal is taken.

But there is no justification in law, as I see it, for holding that in a case of this kind the alleged tort feasor's right to a jury trial of a tort action can be defeated by the fact that the right sought to be enforced by plaintiff is a subrogated right and not the original right. Our own cases so hold: See Atlantic Coast Line R. R. Co. v. Campbell, 104 Fla. 274, 139 Sou. Rep. 886. Compare: Royal Indemnity Co. v. Knott, 101 Fla. 1495, 1502, 136 Sou. Rep. 474.

If a tort was committed by the negligent audit of the Dantzler Lumber & Export Company's books by Ernst & Ernst as alleged, it gave rise to a legal right to a tort action by Dantzler Lumber & Export Company against Ernst & Ernst. On that tort action Ernst & Ernst are constitutionally entitled to a jury trial. Their right to a trial by jury ought not to be (on principle) defeated by the fact that Columbia Casualty Company has acquired a right to subrogation under its contract of suretyship entered into with Dantzler Lumber & Export Company (to which contract Ernst & Ernst is not a party). As I see it, Columbia Casualty Company, as the new plaintiff by reason of subrogation, must step into the shoes of Dantzler Lumber & Export Company and must submit its claim to a jury trial just as Dantzler Lumber & Export Company would have had to do, had no subrogation taken place.

Can it be said that where A has a claim against B for damages by reason of tort committed by A against B that B loses his right to a jury trial because C by reason of the doctrine of subrogation as applied between A and C, has acquired A's claim against B?

My view is that under the principles stated in Atlantic Coast Line R. R. Co. v. Campbell, 104 Fla. 274, 139 Sou.

Rep. 886, Columbia Casualty Company is, as a matter of law, a subrogated plaintiff and is entitled to maintain a suit at law against Ernst & Ernst as tort feasors, to the same extent that Dantzler Lumber & Export Company could have done had no subrogation taken place, but that subrogation in favor of Columbia Casualty Company against Dantzler Lumber & Export Company cannot operate so as to destroy the right to a jury trial which was at all times possessed by Ernst & Ernst as against the subrogated claim.

I concur as to the finding of some equity in the bill, to-wit: the right to subrogation and to a discovery by the surety as to material facts relating to its suretyship. I dissent from all other portions of the opinion prepared by Mr. Justice BUFORD.

The rule that a court of equity once having assumed jurisdiction of a cause on any equitable ground will reach out and draw into its consideration and determination the entire subject matter, bringing before it all the parties interested therein, means no more than that where there is a distinct equitable controversy and a substantial ground of equitable jurisdiction, that a court of equity will render complainant full relief even to the extent of passing upon strictly legal questions and granting strictly legal remedies. It does not mean a bill in equity can bring into a court of equity as incident to the right to discovery, a separate cause of action cognizable in a court of law. Russell v. Clark, 7 Cranch (U. S.) 69, 3 L. Ed. 271; Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. Rep. 249, 30 L. Ed. 451.

In this case there is no equitable controversy between Columbia Casualty Company and Ernst & Ernst; no privity of contract between them and no right of discovery from them. The equitable controversy is wholly between Columbia Casualty Company, on the one hand, and Dantzler Lum-

ber & Export Company, on the other. To join in Ernst & Ernst for the purpose of settling an alleged action at law against them to which Columbia Casualty Company has by operation of law become subrogated, is not sustained by any authority other than the general rule above cited in the preceding paragraph, and as will be seen, the general rule does not mean that third parties not in privity to an equitable right, can be brought in as an incident to it, and thereby deprived of the right to a trial by jury. Hitchcock v. Mortgage Securities Corp., 95 Fla. 147, 116 Sou. Rep. 244, cited in the majority opinion, insofar as it held to the contrary, has been by this Court expressly overruled in a recent decision of this Court. See Norris v. Eikenberry, 103 Fla. 104, 137 Sou. Rep. 128 (137 Sou. Rep. text page 134, column 1).

I therefore concur in part and dissent in part to the extent indicated.

WHITFIELD, J., concurs.

BROWN, J. (dissenting).—Although the bill may show a right of action on the part of the Dantzler Company against Ernst & Ernst, either *ex contractu* for breach of contract, or *ex delicto* for breach of duty arising out of the contract between those parties, I cannot see how the doctrine of subrogation can be resorted to in support of a right of action, either legal or equitable, on behalf of the Columbia Casualty Company against Ernst & Ernst.. The contract between Ernst & Ernst and the Dantzler Company was not made for the benefit of the Casualty Company. Of course, upon payment to the Dantzler Company of the loss occasioned by the embezzlement of its funds by one of its employees, for whose fidelity to his trust the Casualty Company had executed a surety bond to the Dantzler Company to the extent of the amount named in the policy, the Casualty

Company became subrogated to the extent of such payment to any right of action which the Dantzler Company may have had against the defaulting employee whose faithfulness the Casualty Company had in effect guaranteed, but this right of subrogation did not extend to any cause of action the Dantzler Company may have had against the firm of accountants whom they had employed for some years to make an annual audit of the company's books. The Dantzler Company was under no obligation to the Columbia Casualty Company to employ Ernst & Ernst, or any one else, to audit their books. They apparently made this contract for annual auditing for their own benefit. The Columbia Casualty Company was in no way a party to the contract between the Dantzler Company and Ernst & Ernst, nor does it appear that, in writing the surety contract with the Dantzler Company, the Casualty Company were relying upon or had any knowledge of the fact that the Dantzler Company were employing Ernst & Ernst to make an annual audit of their books. See Ultramares' Corporation v. Touche, 255 N. Y. 170, 74 A. L. R. 1139. Nor is there any question of conventional subrogation involved in this case.

Cases involving the right of insurance companies to subrogation to the rights of the insured party against tort feasors causing loss to the insured subject matter, are not in point here, as in those cases the liability of the insurance company is based on the destruction or damage to the subject matter of the contract, and there is a direct relationship between the subject matter of the contract and the tort of the third party. But here there is no direct relationship between the contract of suretyship entered into between the Casualty Company and the Dantzler Company and the contract for auditing services entered into between Dantzler Company and Ernst & Ernst. So far as the Casualty Com-

pany is concerned, its liability and its loss would have been the same if the Dantzler Company had never made a contract with Ernst & Ernst and had never had its books audited. There being no privity of contract, nor any duty owed by the auditors to the Casualty Company, the latter certainly had no right of direct action against such auditors.

Nor is there any showing of a right to equitable or legal subrogation; nor does the writer know of any rule of law under which the Casualty Company could have compelled the Dantzler Company to prosecute an action for damages against Ernst & Ernst, and so, if the Dantzler Company saw fit to compromise or waive any claim they may have had against the auditors, the Casualty Company had no right to complain.

See in this general connection, 25 R. C. L. 1831; Marianna National Farm Loan Association v. Braswell, 95 Fla. 510, 116 So. 639.

Furthermore, as pointed out by Mr. Chief Justice Davis in his opinion herein, the procedure here attempted to be put in motion, even if there was a right of subrogation, would deprive Ernst & Ernst of their right to a trial by jury.

I think, therefore, the order overruling the motion to dismiss the bill should be reversed.