**MARYLAND CASUALTY CO. v. COOK**
et al.

No. 623.

District Court, E. D. Michigan, N. D.

Oct. 8, 1940.

Mason, Davidson & Mansfield and Walter A. Mansfield, all of Detroit, Mich., for

Maryland Casualty Co., and United States Fidelity & Guaranty Co.

Arthur J. Kinnane, of Bay City, Mich., for Jonathon Cook and Commercial Casualty Ins. Co.

Hyman Hoffman, of Flint, Mich., for City of Flint.

Dexter G. Conklin, of Flint, Mich., in pro. per.

TUTTLE, District Judge.

Dexter G. Conklin was appointed city treasurer by the City of Flint, Michigan. This appointment was confirmed by the City Commission. The period of employment was continuous, beginning April 5, 1928, and ending October 24, 1935. The employment was discontinued by resignation. The resignation was given by reason of and immediately following the discovery of misappropriations and embezzlements by said Dexter G. Conklin.

In this suit the United States Fidelity & Guaranty Company of Baltimore, Maryland, a Maryland Corporation, is designated as defendant. While it is designated as defendant, actually it appears in these proceedings presenting a statement of a cause of action as against Jonathon Cook, d/b/a Jonathon Cook & Company of Chicago, Illinois, and the Commercial Casualty Insurance Company of Newark, New Jersey, analogous to the statement of the cause of action of the Maryland Casualty Company of Baltimore, Maryland. Both the Maryland Casualty Company and the United States Fidelity & Guaranty. Company present claims which are identical, excepting as to amounts, and both are therefore plaintiffs.

The City of Flint carried fidelity bond insurance for its protection, said fidelity bonds providing that if Dexter G. Conklin should embezzle, misappropriate or misapply funds belonging to the City of Flint then the surety on such fidelity contracts was to be chargeable for such loss.

During the period of time involved in this case the surety companies protected the city of Flint against embezzlement by Dexter G. Conklin as city treasurer. The dates of coverage and the amount of coverage were as follows:

By reason of its contracts of fidelity insurance, the Maryland Casualty Company, a Maryland Corporation, was required to pay, and did pay, to the City of Flint on account of losses incurred by the City of Flint by reason of fraud, misappropriation and embezzlements of Dexter G. Conklin, City Treasurer, the amount of $12,969.15.

By reason of its contract of fidelity insurance the United States Fidelity & Guaranty Company, a Maryland Corporation, was required to pay, and did pay, to the City of Flint on account of losses incurred by the City of Flint by reason of fraud, misappropriation and embezzlements of Dexter G. Conklin, City Treasurer, the amount of $3,148.21.

On effecting such payments, the Maryland Casualty Company and the United States Fidelity & Guaranty Company became subrogated to and were assigned all of the rights of the City of Flint to the extent of the payments as by them effected.

The City of Flint had prepared "specifications for audit" for the year period beginning July 1, 1931, ending June 30, 1932. These specifications for audit were submitted to any certified public accountant who cared to make a bid for the doing of the work as required thereby. The specifications provided in part as follows:

"The City of Flint, Michigan, is requesting bids for a complete audit of the transactions of its various boards, departments and offices on a monthly basis for the fiscal year beginning July 1, 1931, and ending June 30, 1932, subject to the following conditions which will become a part of any contract entered into:

"1. The examination shall be a complete monthly audit. Cash balances shall be verified at the beginning of the fiscal period. Cash counts shall be made each month at irregular periods. All cash receipts shall be verified by a deposit in one of the depositories of the City. Disbursements shall be verified for the legality of same. Purchase orders shall be verified for charter provision in regards thereto, as well as, ordinance governing purchasing. Commission proceedings shall be checked for compliance with the various

| | | | | |
|---|---|---|---|---|
| Maryland Casualty Company, | | | | |
| " | " | " | 6/1/31 to 6/1/32 | $200,000.00 |
| " | " | " | 6/1/32 to 6/1/33 | 200,000.00 |
| United States Fidelity & Guaranty Co., | | | 6/1/33 to 7/30/34 | 200,000.00 |
| Maryland Casualty Company, | | | 7/30/34 to 8/19/35 | 200,000.00 |
| | | | 8/19/35 to 10/24/35 | 200,000.00. |

authorizations, agreements, allowances, contracts or other procedures contained therein. Cash balances shall be verified at the close of the fiscal period. Any other duties or procedures which ordinarily become a part of a complete audit although not specifically stated herein, shall be deemed a part of these specifications.

"2. It will not be considered the duty of the contracting auditors to bring into balance any ledger or other book of record during this engagement. It shall be their privilege to request the Director of Finance to have brought into balance any book of record which should have been in balance for their convenience.

\* \* \* \* \* \*

"5. \* \* \* No payments will be made by the city before the completion and acceptance of the work for the fiscal year unless a surety bond for faithful performance of contract has been filed, and then only after the approval by resolution of the City Commission.

"6. A letter of certification shall be filed with the City Clerk monthly as a matter of record that the monthly audit has been made. The report of the contracting auditors for the fiscal year shall be a certified report stating briefly but clearly what their examination consisted of, with the necessary exhibits and schedules in support thereof. It should show particularly the exact financial condition of the various funds of the City, a proper accounting for the cash receipts and disbursements for the year, a verification of deposits, and a reconciliation of bank balances.

\* \* \* \* \* \*

"8. The contracting auditor's report for the fiscal year shall be made for all departments, boards and offices of the City as of June 30, 1932. The report shall be made with bound imitation leather covers, and delivered as follows: one copy containing a complete report of all departments, boards and offices, to the City Clerk, one copy containing a complete report of all departments, boards and offices, to the Director of Finance, one copy containing the board report only, to the Recreation and Park Board, one copy containing the board report only, to the Board of Hospital Managers, two copies bound separately to contain departmental reports only, to the Justice Courts and the Water Department respectively. The reports shall be submitted not later than July 30, 1932.

\* \* \* \* \* \*

"10. The following departments, offices and boards are to be included in this audit engagement:

"1. Director of Finance

"2. City Treasurer."

Defendant Jonathon Cook, of Chicago, Illinois, an individual, doing business as Jonathon. Cook & Company, submitted his bid to the City of Flint in accordance with these specifications. This provided in part:

"We are submitting herewith our sealed bid on the audit of the books and records of the various departments of the City of Flint, Michigan, for the period from July 1, 1931 to June 30, 1932, in accordance with specifications issued by you, for a total sum not to exceed ($2,975.00) Two Thousand Nine Hundred Seventy-Five Dollars including all expenses.

\* \* \* \* \* \*

"Jonathan Cook & Company have been bonded at numerous times in similar cases and shall be pleased to furnish same as requested.

\* \* \* \* \* . \* ".

Subsequently a contract was entered into by and between defendant Jonathon Cook and the City of Flint, which contract provided in part as follows:

"This Agreement, made this 20th day of August, A. D., 1931, by and between Jonathon Cook & Company of Muskegon, Michigan, hereinafter called The Company, and the City of Flint, a municipal corporation, in the County of Genesee, State of Michigan, hereinafter called the City.

"\* \* \* No payments will be made by the City before the completion and acceptance of the work for the fiscal year unless a surety bond for faithful performance of contract has been filed before any monies are paid, and then only after the approval by resolution of the City Commission.

"Witnesseth: The Company hereby agrees to audit the books and accounts of the various boards, departments and offices of the City of Flint on the monthly basis for the fiscal year beginning July 1, 1931 and ending June 30, 1932 subject to the conditions and in accordance with the specifications hereto attached, which speci-

fications are made a part hereof as fully as if written herein."

In accordance with such specifications, the Commercial Casualty Insurance Company, a New Jersey corporation, a hired surety for profit, executed bond on behalf of Jonathon Cook & Company to the benefit of the City of Flint in the sum of $2,975, the condition of their said bond being as follows:

"Whereas, said Principal has been awarded a contract under specifications for audit of the official records of the City of Flint, Michigan, for a period beginning July 1st, 1931 and ending June 30th, 1932.

"Now, Therefore, if the said Principal shall make audits of the official records of the various departments of the City of Flint, Michigan, in accordance with the specifications of audit for the period beginning July 1st, 1931, and ending June 30th, 1932, then this obligation to be void; otherwise to remain in full force and effect."

This bond was typed on the letterhead stationery of the Commercial Casualty Insurance Company; was executed in Chicago by the agent of the Commercial Casualty Insurance Company, and was sent to the City of Flint and countersigned by a Michigan agent of the Commercial Casualty Insurance Company. It was approved by the City Attorney, and I find as a fact that the bond and the language thereof were prepared by the Commercial Casualty Insurance Company.

I now proceed to discuss the various issues of fact and law as are presented as to the obligations of the several defendants.

First, as to Dexter G. Conklin, defendant herein. He was dishonest and embezzled moneys belonging to the City of Flint during each and all of the years in question. He had different ways of embezzling and misappropriating the money. Principally, such moneys collected by him and misappropriated by him were delinquent personal property taxes owing to the City of Flint. For one example, he collected delinquent taxes voluntarily paid by the taxpayer and then issued what has been termed a temporary receipt and no record was made of the tax payment in his office whatever. For another example, he issued the official receipt of the City of Flint, but duplicate copies of such receipt supposed to be recorded in his office were destroyed and no record of the taxpayer having paid such item was made. For another example, he, as permitted by the statutes of the State of Michigan, seized personal property of the taxpayers and by authorization of law sold these assets of the taxpayers who were delinquent for the purpose of satisfying the tax indebtedness. Having done this, he issued the so-called temporary receipt and no record of payment of the taxes appeared in his office.

For another example, he altered the delinquent tax rolls by increasing the amount shown to be owing in an amount sufficient so that his books balanced by reason of his collection of the tax money which he had embezzled.

Dexter G. Conklin embezzled money for a large and substantial amount. He undoubtedly embezzled money to an extent greater than the City of Flint was able to prove. I say this because of the lapse of years and the impossibility of locating certain of the taxpayers shown by the books as delinquent, many of whom undoubtedly had paid their taxes.

The embezzlements and misappropriations resulted in a loss to the Maryland Casualty Company of $12,917.30. That is the amount of their payment to the City of Flint. In addition thereto, expenses have been incurred by the Maryland Casualty Company in investigation of $51.85, making a total loss to this company of $12,969.15.

The embezzlements and misappropriations resulted in a loss to the United States Fidelity & Guaranty Company of $3,148.21. That is the amount of their payment to the City of Flint. In addition thereto, expenses have been incurred by the United States Fidelity & Guaranty Company in investigation of $11.35 making a total loss to this company of $3,159.56.

These losses to the Maryland Casualty Company and to the United States Fidelity & Guaranty Company resulted entirely by reason of the fraud and embezzlements of Dexter G. Conklin, in an official capacity and while acting as fiduciary for the City of Flint. Hence, although this is a chancery action it sounds in wilful, malicious and intentional tort and not in assumpsit, and if the proceedings were on the law side of the court the finding as against Dexter G. Conklin would be in wilful, malicious and intentional tort to the amount and extent as before mentioned. This fact is particularly mentioned and found as a fact for the benefit of the

Maryland Casualty Company and United States Fidelity & Guaranty Company, and in order to prevent a discharge of these debts in the event that Dexter G. Conklin should attempt to secure a discharge of these obligations in bankruptcy.

■ As to Jonathon Cook, d/b/a Jonathon Cook & Company.

Subrogation of the Sureties to the Right of Action of the City of Flint as Against Public Accountants.

The Maryland Casualty Company and the United States Fidelity & Guaranty Company, sureties on fidelity bonds on behalf of Dexter G. Conklin, City Treasurer, on the making good of his defalcations, are subrogated pro tanto to the City of Flint's right of action as against Jonathon Cook, d/b/a Jonathon Cook & Company, Public Accountants, for his negligence in the auditing of the books of the City of Flint, in consequence of which negligence the earlier defalcations of Dexter G. Conklin as City Treasurer were not discovered, and the City Treasurer, Dexter G. Conklin, was left in a position to commit subsequent defalcations. Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116, 95 A.L.R. 258. Annotation 95 A.L.R. 269.

Construction of the Contract and Specifications.

■ I have quoted at length hereinbefore from the specifications for the audit and the contract for the audit. The contract made the specifications a part of the audit and required that the audit engagement be performed in accordance with the specifications.

What is the meaning to be given to this contract and specifications? Am I to interpret them by the usual literal meaning of the words, or am I to place an interpretation upon this contract and the specifications as requested by this defendant on the basis of accounting terms? These technical accounting terms have been referred to as a cash audit, as a balance sheet audit, and as a detailed audit. Some of the accountants here testifying have said that this contract and specifications required a cash audit. Some have said it required a balance sheet audit. Some have said it required a combination of a cash and balance sheet audit, and some others have said that it required a detailed audit.

In the first place, the Director of Finance for the City of Flint in drawing these specifications and drawing this contract had no knowledge of technical auditing terms. Neither did the City Commission, which had the authority to make the contract with the specifications, have any such knowledge. They did not know what a cash audit meant or what a detailed audit meant or what a balance sheet audit meant. They did not have these technical terms in mind. They knew they wanted a complete audit. They knew of some things that they wanted done for the City by these accountants, so they put those things down first. Then when they mentioned the specific details that they knew they wanted covered, they went on and used general language to include everything else that was ordinarily required to be done in the making of a complete audit.

Accordingly, I reach the determination, and it is my opinion, that this contract and these specifications should be interpreted according to their literal and usual meaning. There is nothing to indicate that a partial or limited audit was intended. The language calls for a complete audit. Why should I attempt to call this audit engagement by some technical term as the defendant accountant urges me to do? Neither the contract nor the specifications use any such technical terms. There is nothing to guide me in an effort to classify it as a cash audit, a balance sheet audit, or a detailed audit. If I so classified this audit contract, I would necessarily then have to reach a conclusion as to exactly what work that classification called for. The net result of such reasoning would lead me to an interpretation contrary to the plain, ordinary, everyday meaning which this contract and these specifications disclose for themselves.

Therefore, I reach the conclusion that this audit engagement is not limited; that it should be interpreted according to its literal meaning, its actual meaning, its plain everyday, common-sense meaning. Restatement, Contracts, Secs. 230 to 235 (a).

■ I think that it is high time for accountants to know that if they want a particular contract which they enter into to be measured in the technical terms of a cash audit, or a balance sheet audit, or a detailed audit, they should insist that their contract and the specifications which they

agree to comply with in their contract should plainly state the facts.

So I interpret this contract with its specifications according to the plain language used.

The witnesses have all agreed that no technical terms or language has been used in either the contract or the specifications. Ordinary, everyday English has been used. It is easily understood and interpreted. If accountants wish a contract construed in accordance with their own technical language, then they must see to it that their technical language is used in their contracts.

█ The defendant, Jonathon Cook, testified that on receiving these specifications and on reading the specifications, he did not know just what work was required to be performed for the City of Flint and so he went to the City of Flint and had a talk with the Director of Finance and thereafter entered into the contract in reliance upon that conversation had prior to the execution of the contract. That conversation with the Director of Finance does not mean a thing. The contract was with the City of Flint and not with the Director of Finance. It is the contract which Jonathon Cook made with the City of Flint which must be construed and not conversations or oral agreements reached with independent officers of the City prior to the execution of the contract. Those prior conversations, in order to become binding, should have been embodied in the written contract and signed pursuant to proper authority. Therefore, the court has no alternative but to hold this defendant to performance in accordance with the terms of his written contract. Restatement, Contracts, Sec. 237.

█ On this point there is an additional thing that should be mentioned. Once that contract was executed and signed by the parties, no individual officer, agent or employee of the City of Flint was authorized to alter or vary the terms of that written instrument. That cannot be done by any individual unless the City has lawfully delegated the authority to a particular individual. In this case, the City Commission of the City of Flint, the law-making body of the City of Flint, established the requirements of this audit engagement, and unless they agreed to a change or an alteration of the terms of that audit engagement and authorized an alteration, the audit engagement is to be performed in accordance with the terms of the contract. No such change was made or authorized. Restatement, Contracts, Sec. 408(a).

Negligence of Accountants or Auditors.

█ While I have reached the conclusion and interpreted this contract for the audit to require a complete audit within the broad aspects of the meaning of that word, it does not make any difference in deciding as to negligence or non-negligence whether I interpret it as a complete audit within the broad aspects of this contract or whether I say it is a combination cash and balance sheet audit. I say that because if I follow the testimony in this case of all of the certified public accountants who have testified they all agree that reasonable care should be used in test checking or in some other way to see that the figures in the controls are in balance with the detailed ledgers. There was not a reasonably careful audit performed by the defendant auditor on either basis, whether it be on the basis of the complete audit or on the basis of the combination cash and balance sheet audit. I reach that conclusion for several reasons as follows:

1. The auditor made no attempt to circularize the delinquent accounts outstanding. If there had been any attempt made, the probabilities are that the discrepancies would have been discovered. Certainly there should have been some attempt made at circularization. It would not necessarily have been a 100 per cent. circularization, but there should at least have been a test circularization. The delinquent accounts should have been canvassed and selected persons contacted either by personal call, by telephone, or by a form letter.

2. Alteration of the tax rolls. There were many items of alterations of the tax rolls. The alterations were very crude. He did not even use the same kind of ink. There are many ways in which these alterations could have been discovered by this defendant auditor. The particular rolls could have been totalled and then compared with the rolls in the assessor's office, which were not altered, and the discrepancies would have immediately come to light. This auditor paid no attention to the original assessor's rolls. Those rolls are a part of the books and records of the City of Flint, and hence were required to be audited and examined.

3. When this defendant auditor or his representatives started to make his monthly audits and his annual audits it was in-

cumbent upon him to audit various delinquent tax rolls including the current tax roll. He should have carefully examined the 1926, 1927, 1928, 1929 and 1930 delinquent tax rolls as well as the 1931 tax rolls. He should have determined whether or not the delinquent balance outstanding on each and every one of those tax rolls balanced with the controls. It is my belief and finding that this was not done. The auditor was unable to produce work sheets. The auditor said he thought that the delinquent tax rolls for several years were totalled in their entirety, and that then the totals taken from the controls for the corresponding years added and the two then compared. Even if done, this, in my judgment, is not reasonably prudent or careful auditing work.

4. This defendant auditor found the delinquent balances outstanding from these tax rolls on the basis of the total obtained over the period of years to be out of balance on the basis of the total obtained from the controls over the period of years. He says that the only thing that he did was to mention it verbally to the Director of Finance, and then he proceeded in the annual report to certify the exact balance to be a stated figure on the delinquent taxes, when actually it was not true, and he had no knowledge whatsoever of what the delinquent balance outstanding was. The auditor did not balance these books or require the City to do so. He should have required the City of Flint to bring these books into balance. It was not done.

5. When this auditor ran tapes, he used figures superimposed upon the tax roll in lead pencil. By that I mean this City Treasurer's office for their convenience had placed out at the extreme edge of the page in lead pencil what they claimed represented the delinquent balances outstanding, and when this auditor ran his tapes he used those pencil figures without checking those figures with the figures in ink to determine whether or not the pencil figures were accurate. Many of them were not accurate and a careful check would have so disclosed.

6. This auditor failed to audit the control as maintained in the City Treasurer's office, either with the control in the Director of Finance's office or with the tax rolls themselves. Had he audited such book in comparison with either the controls or the rolls, he would have found the records decidedly out of balance. It is the failure to

do these things that forces me to the conclusion that this auditor failed to faithfully perform his audit engagement. With a reasonable degree of care the many defalcations would have been discovered. It is the failure upon the part of the auditor to do these things which makes it clear that he did not make the audit he had contracted to make, and he did not do what a reasonably prudent auditor would and should have done under the circumstances. He was negligent.

For the failure to perform this audit engagement in accordance with the terms of this contract as a reasonably prudent and careful auditor would and because of such negligence, this defendant auditor, Jonathon Cook, must respond in damages. Fox & Sons v. Moorish Grant & Co., 1918, 35 Times Law Report, 126; Leeds Estate Building & Investment Co. v. Shepherd, 36 L.R.Chancery Div. 787; Smith, et al. v. London Assurance Corp., 109 App.Div. 882, 96 N.Y.S. 820; National Surety Corp. v. Lybrand et al., 256 App.Div. 226, 9 N.Y.S. 2d 554; Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116, 95 A.L.R. 258; Ultramares Corp. v. George A. Touche et al., 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139.

Is the negligence of the defendant auditor the proximate cause of the damage for which this suit against Jonathon Cook is brought?

The evidence as to all of the shortages and peculations which appear upon the books and records of the City of Flint during the yearly audit engagement of the defendant auditor must be considered. Those marks of irregularity were there in the record.

An auditor performing an audit on the basis of this contract and these specifications and doing his work as a reasonably prudent, careful auditor would have done his work, would have, and should have, discovered some of these many, many irregularities; and, having discovered some of them, all of the others would have been found.

One of the purposes of the audit was to determine whether or not any of the employees of the City of Flint, including the City Treasurer, were embezzling or misappropriating or defrauding the City of Flint of its money. These irregular items were apparent from the books. If they had been brought to the attention of the City of Flint by the auditor, the Treasur-

er's services would have been terminated and the City would then not have been put to the further loss suffered by it by reason of the subsequent misappropriations and peculations by this City Treasurer occurring after the negligent performance of the contract by the auditor. Restatement, Contracts, Sec. 330.

It was fairly within the contemplation of the parties to this contract that this work should be properly done. It was negligently done and thus the defaulting City Treasurer was permitted to continue on in his work. The auditor is obligated to respond in damages for the amount of the shortages accruing after the negligent performance of the audit engagement. Hadley v. Baxendale, 156 Eng.Rep. 145; Fox & Son v. Moorish Grant & Co., supra; Leeds Estate Building & Investment Co. v. Shepherd, supra; Smith, et al. v. London Assurance Corp., supra; National Surety Corp. v. Lybrand, supra; Dantzler Lumber & Export Co. v. Columbia Casualty Co., supra; Ultramares Corp. v. George A. Touche et al., supra.

The Maryland Casualty Company and the United States Fidelity & Guaranty Company having reimbursed the City of Flint for such loss and damage are subrogated to the rights of said City as against Jonathon Cook.

Of the particular loss as sustained by the Maryland Casualty Company on its payment to the City of Flint, the amount of $11,169.09 occurred subsequent to the negligent performance of the contract by the defendant Jonathon Cook.

Of the particular loss as sustained by the United States Fidelity & Guaranty Company on its payment to the City of Flint, the amount of $2,809.61 occurred subsequent to the negligent performance of the contract by the defendant Jonathon Cook.

As to the Commercial Casualty Insurance Company.

What is the obligation of the bond of the defendant Commercial Casualty Insurance Company? The obligation clause of that bond provides:

"Whereas, said Principal has been awarded a contract under specifications for audit of the official records of the City of Flint, Michigan, for a period beginning July 1st, 1931, and ending June 30th, 1932.

"Now, Therefore, if the said principal shall make audits of the official records of the various departments of the City of Flint, Michigan, in accordance with the specifications of audit for the period beginning July 1st 1931 and ending June 30th, 1932, then this obligation to be void; otherwise to remain in full force and effect."

Therefore, in determining the obligation of the Commercial Casualty Insurance Company there must be determined the obligation of the defendant Jonathon Cook & Company as per the contract and the specifications, and the requirements as set forth and enumerated by the contract and the specifications as to the obligation of the surety bond.

The specifications say, in part: "No payments will be made by the City before the completion and acceptance of the work for the fiscal year unless a surety bond for faithful performance of contract has been filed."

The contract says, in part: "No payments will be made by the City before the completion and acceptance of the work for the fiscal year unless a surety bond for faithful performance of contract has been filed."

This bond cannot be read by itself separately without reading and construing the specifications and the contract, and there is no question but that the specifications and the contract require the principal on the bond to faithfully perform his audit engagement, and if he does not faithfully perform the audit engagement then the bond has been breached. In fact, the specifications and contract specifically and definitely define the auditor's bond to be given as a "bond for faithful performance." Restatement, Contracts, Sec. 238 (a).

The defendant auditor, the principal on this bond, did not faithfully perform his audit engagement. Therefore, the bond has been breached. Therefore, the Commercial Casualty Insurance Company is holden on their bond.

It is argued by the Commercial Casualty Insurance Company that its bond is a completion bond only; that it was not required to be conditioned upon anything other than that the principal, this defendant auditor, should be there twelve times a year and make an audit, irrespective of how made, and then give a report at the end of the year irrespective of what was contained in the report.

The position which the Commercial Casualty Insurance Company would like this court to take in construing this bond cannot be taken because it is apparent that if that were all that was required by the bond, then the words "faithful performance of the contract" would not have been written in the specifications and would not have been written in the contract.

Further, both the specifications and the contract use the language, "before the completion and acceptance of the work". If this were merely a completion bond, on the basis of the argument of the Commercial Casualty Insurance Company the words "and acceptance" would not have been inserted in either contract or specifications.

There is nothing in the bond, there is nothing in the specifications, and nothing in the contract which would justify the conclusion that this is a completion bond without any regard for faithful performance of the work which was to be completed. The specifications and the contract definitely describe the bond to be given as "a surety bond for faithful performance of contract."

Counsel for the Commercial Casualty Insurance Company predicates his argument upon verbal testimony given by a former Director of Finance of the City of Flint and the City Clerk of the City of Flint. Obviously, their testimony does not alter the terms or conditions of this bond or of the contract or of the specifications, because no authority was ever conferred upon the Director of Finance or the City Clerk to decide what the obligation of the bond should be. The obligation of that bond was set by the law-making body of the City of Flint, the City Commission. No officer, agent, or employee had authority to alter or amend in any way or manner the mandate of the City Commission as to the requirements of this bond.

Further, we have the very definite proposition that, this defendant surety being a hired surety for profit and having drawn its own form of bond, any ambiguity in the bond would be construed as against it. I do not think this bond, the contract, or the specifications are ambiguous. They are as clear as the English language is capable of making them. Therefore, there is nothing to construe; but if we were to take the argument of this surety as to ambiguity, we must of necessity construe that ambiguity against it. Restatement, Contracts, Sec. 236(d).

Lastly, we have this fact for consideration, and it cannot be refuted. If this is only a completion bond; if it only required the defendant auditor to be there twelve times annually and to submit a report at the end of the year without any regard for what work was to be done, or how the work was to be done, or the accuracy of the report when given at the end of the year, the bond would be worthless.

The Commercial Casualty Insurance Company is accordingly obligated on its bond to the Maryland Casualty Company and United States Fidelity & Guaranty Company.

Decree may enter finding for the Maryland Casualty Company and against Dexter G. Conklin as follows:

Payment to the City of Flint... $12,917.30
Cost of investigating claim..... 51.85
Cost of investigation—witness fees—payments to expert witnesses incidental to this suit.. 1,187.45

$14,156.60

Interest may also be computed at the rate of 5 per cent. per annum from December 15, 1936, as to the first and second items only.

Decree may enter finding for the United States Fidelity & Guaranty Company and against Dexter G. Conklin as follows:

Payment to the City of Flint.... $3,148.21
Cost of investigating claim...... 11.35

$3,159.56

Interest may also be computed at the rate of 5 per cent. per annum from September 29, 1936.

Decree may enter finding for the Maryland Casualty Company as against Jonathon Cook in the sum of $11,169.09. Interest may be computed on this sum at the rate of 5 per cent. from December 15, 1936.

Decree may enter finding for the United States Fidelity & Guaranty Company as against Jonathon Cook in the sum of $2,809.61. Interest may be computed on this sum at the rate of 5 per cent. from December 15, 1936.

Decree may enter finding as against the Commercial Casualty Insurance Company in the amount of $2,975.00 together with interest at the rate of 5 per cent. per annum from June 28, 1937, to date of entry of decree, said decree to provide that the

Maryland Casualty Company and the United States Fidelity & Guaranty Company recover from the Commercial Casualty Insurance Company as follows: Maryland Casualty Company, $2,377.76, together with interest thereon at the rate of 5 per cent. per annum from June 28, 1937; The United States Fidelity & Guaranty Company, $597.24, together with interest thereon at the rate of 5 per cent. per annum from June 28, 1937.

The decree shall provide that on satisfaction by the Commercial Casualty Insurance Company the obligation of Jonathon Cook to the Maryland Casualty Company and the United States Fidelity & Guaranty Company shall be reduced in proportion. The decree shall further provide that on satisfaction of decree by Jonathon Cook the obligation of Dexter G. Conklin to the Maryland Casualty Company and United States Fidelity & Guaranty Company shall be reduced in proportion.

The decree shall further provide that the Maryland Casualty Company and United States Fidelity & Guaranty Company be permitted their costs as against Dexter G. Conklin, Jonathon Cook and the Commercial Casualty Insurance Company. The decree shall further provide that execution shall issue as against Dexter G. Conklin, Jonathon Cook and the Commercial Casualty Insurance Company.

This opinion shall stand as findings of fact and conclusions of law. Proposals for additional findings of fact and conclusions of law may be filed at any time prior to final decree.