666 So.2d 159 (1995)
LINCOLN NATIONAL HEALTH AND CASUALTY INSURANCE COMPANY APPELLANT,
v.
MITSUBISHI MOTOR SALES OF AMERICA, INC., et al., Appellees.
No. 94-772.
District Court of Appeal of Florida, Fifth District.
September 22, 1995.
Rehearing Denied January 19, 1996.
Amy M. Tamargo, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A. Tampa, for Appellant.
Dennis J. Wall, of Dennis J. Wall, Attorney At Law, A Professional Association, Orlando, for Appellees.
GRIFFIN, Judge.
This is the appeal of a summary final judgment entered against Lincoln National Health and Casualty Company ["Lincoln"] on its claim for equitable subrogation. Because we find that Florida law applies to Lincoln's subrogation claim, and because we find no *160 bar to Lincoln's claim under Florida law, we reverse.
This is the third in a series of cases which arose out of a motor vehicle accident that occurred in Orlando, Florida on March 15, 1990. Kathleen Chew, a resident of the state of California, struck a car being driven by Alan Skowronek, a resident of Connecticut. Skowronek, a student at Central Connecticut State University ("Connecticut State"), was in Florida to attend a tennis tournament on behalf of Connecticut State when the accident occurred. Skowronek sued Chew, as well as the various entities[1] ("owner/lessors") which had an interest in the vehicle Chew was apparently renting at the time of the accident, to recover damages for the serious injuries Skowronek sustained ("the first action").
Lincoln paid Skowronek in excess of $500,000 for medical and other related expenses under a medical or health policy which insured Connecticut State through the National Collegiate Athletic Association (the "NCAA"). Lincoln then filed an action against Chew and the owner/lessors ("the second action"), in which it sought reimbursement for the medical benefits paid to Skowronek. The complaint was apparently based on a claim of equitable subrogation and alleged simply that Lincoln was entitled to reimbursement for the medical benefits paid to Skowronek since it had discharged a debt which was owed by Chew and the owner/lessors.
On March 30, 1993, following the filing of the complaint in the second action, Skowronek accepted a settlement offer made by defendants in the first action. The agreement specifically acknowledged that Lincoln had paid medical benefits to Skowronek under the NCAA policy, but provided that all monies paid under the settlement were intended to constitute "damages on account of personal injuries and sickness," in an apparent attempt to preclude Lincoln National from asserting a right to any monies paid under the agreement. Chrysler Insurance Company, the liability insurer for Mitsubishi and Walden, and Usher Insurance Company, the liability insurer for Lindo's and Chew, were also included as parties to the agreement. Pursuant to the agreement, Skowronek agreed to release the named defendants from any and all claims for damages conditioned upon full and final payment of a lump sum of approximately $2,000,000, plus periodic monthly payments of $3,500 and annual payments of $20,000 for life. Skowronek and his attorneys agreed, however, to indemnify the remaining parties from all claims made by a number of third parties, including Lincoln. With respect to Lincoln, the indemnity provision further stated the parties' belief that Lincoln had no right to reimbursement under Connecticut law for its outlay. The agreement provided for entry of a dismissal with prejudice in favor of defendants upon payment of the $2,000,000 lump-sum payment required by the agreement, but specified that the court would retain jurisdiction for the disposition of any lien or subrogation claims.
On May 13, 1993, in accordance with a joint stipulation filed by the parties, the court dismissed the first action with prejudice but reserved jurisdiction as to cross-claims between the named defendants and for the adjudication of all liens, subrogation and/or reimbursement claims, if any, to be submitted on behalf of third parties. Thereafter, on August 16, 1993, Skowronek filed a motion in the first action asking the court to determine whether Lincoln had any subrogation rights with respect to the funds he had received from the named defendants and their insurance companies. Shortly before the hearing on the motion, Lincoln dismissed the second action without prejudice since it had admitted in a request for admissions that the case was governed by Connecticut law, and the court had denied its motion to amend its response to the request to assert that Florida law governed.
Lincoln's counsel attended the October 25, 1993 hearing on the motion in the first action *161 to determine whether Lincoln had any subrogation rights against Skowronek, but argued that it could not be bound by a decision in the action since it had never been made a party. That same day, Lincoln filed the instant action for equitable subrogation against the named defendants ("the third action") to recover the medical benefits paid to Skowronek.
On November 8, 1993, the court entered an order in the first action which found that Lincoln had no subrogation rights against Skowronek.[2] The named defendants, thereafter, filed motions to dismiss the third action and for summary judgment, asserting that Lincoln was not entitled to equitable subrogation for the medical payments made to Skowronek. Lincoln opposed the motions filed by defendants, but did not file its own cross-motion for summary judgment. After hearing argument, the lower court entered summary final judgment in favor of Chew and the owner/lessors in this action.
The threshold question presented by this appeal is what state's law governs Lincoln's claim for equitable subrogation. The trial court found that the law of the State of Connecticut governs the existence of any alleged right of subrogation, accepting the defendants' argument that Lincoln's right to subrogation arises from the contract of insurance; thus, Florida's choice of law principles pertaining to contracts should be applied to this action. Under these choice of law rules, the laws of the place in which a contract was made govern matters concerning its execution, interpretation and validity, unless public policy requires the assertion of Florida's paramount interest in protecting its citizens from inequitable insurance contracts. See Sturiano v. Brooks, 523 So.2d 1126, 1129-130 (Fla. 1988).
We agree with Lincoln that the action is governed by Florida's tort choice of law principles. This is not an action between the insurer and the insured concerning matters governed by the contract. The claim asserted by Lincoln in Florida is for equitable subrogation against third-party tortfeasors with whom it has no contract for medical benefits paid to Skowronek. Such an action is a creature of equity that does not depend on contract, but which follows as a legal consequence of the acts and relationship of the parties. West American Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986), review denied, 504 So.2d 769 (Fla. 1987). In such an action, the insurer's rights are dependent on the insured's rights in tort against the third-party tortfeasor. Lumbermens Mut. Cas. Co. v. August, 530 So.2d 293, 295 n. 3 (Fla. 1988); State Farm Mut. Ins. Co. v. Olsen, 406 So.2d 1109 (Fla. 1981). The insurer, as subrogee, stands in the shoes of its insured with respect to the insured's tort claim against the tortfeasor. See generally Underwriters At Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla. 1980); Atlantic Coast Line R. Co. v. Campbell, 104 Fla. 274, 139 So. 886 (Fla. 1932). In the Atlantic case, the court explained:
And so it is that, if [the victim] applies first to the insurer and receives his whole loss from the insurer, he thereafter holds his claim against the [tortfeasor] in trust for the insurer who indemnified him. Such being the equitable situation that exists, the party holding the legal right against the tort-feasor is deemed to have made an equitable assignment of his right to recover for the tort, which the insurer is entitled to enforce by an action brought in the name of the injured party for his own use and benefit and against the tortfeasor, after the insurer has already indemnified the *162 injured party in the first instance by paying the loss he has sustained through the injury he tortiously inflicted.
139 So. at 888.
Given that Lincoln stands in Skowronek's shoes and that Skowronek's underlying claim sounds in tort, tort choice of law principles apply. Aetna Cas. and Surety Co. v. Huntington Nat'l Bank, 587 So.2d 483 (Fla. 4th DCA 1991), approved, 609 So.2d 1315 (Fla. 1992); Andrews v. Continental Ins. Co., 444 So.2d 479 (Fla. 5th DCA), review denied, 451 So.2d 847 (Fla. 1984). Under these principles, the law of the state where the accident occurred (here, Florida) determines the rights and liabilities of the parties unless, with respect to a particular issue, another state has a more significant relationship to the occurrence. See generally Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980) (citing Restatement (Second) of Conflict of Laws §§ 145-146 (1971)). As Lincoln maintains, the trial court erred in applying Connecticut law to this dispute, since the accident occurred in Florida, and no other state had a more significant relationship to the occurrence or the parties with respect to Lincoln's right of subrogation against third-party tortfeasors. Indeed, two of the third-party tortfeasors, Walden's and Lindo's, are Florida corporations, and Mitsubishi is doing business in Florida. Chew is a resident of California, and Lincoln's principal place of business is in Illinois, not in Connecticut. Skowronek does appear to be a resident of Connecticut, but he is not a party to this action and has, in any event, settled with the remaining tortfeasors.
Assuming that Florida law applies to this action, defendants next urge that the release in their favor signed by Skowronek bars Lincoln's subrogation claim.[3] Defendants rely on High v. General American Life Ins. Co., 619 So.2d 459 (Fla. 4th DCA), review denied, 629 So.2d 133 (Fla. 1993), which was an action for subrogation brought by a health insurer against two third-party tort-feasors to recover medical benefits the insurer had paid to its insured. The tortfeasors asserted as an affirmative defense that the action was barred because of a general release signed by the insured. The trial court disagreed and directed a verdict in favor of the insurance company, but the appellate court reversed, finding that the release was an absolute bar to any action for subrogation brought by the insurance company against the third-party tortfeasors. The court reasoned:
When [the insured] executed a release of the [tortfeasors], he could no longer assert any claim against them arising out of the automobile accident. Appellee stands in the shoes of its insured and can have no greater rights, Blue Cross/Blue Shield United of Wisconsin v. Inverrary Hotel Corp., 579 So.2d 863 (Fla. 4th DCA 1991) and thus is likewise barred by the release. We think the law is clear that if one who sustains the loss as the result of negligence or wrongdoing of another releases the tort-feasor, an insurer subrogated to the right of the injured party is barred by that release. See, State Farm Mut. Auto. Ins. Co. v. Herrin, 230 So.2d 709 (Fla. 2d DCA 1969); DeCespedes v. Prudence Mut. Casualty Co., 193 So.2d 224 (Fla. 3d DCA 1966), affirmed, 202 So.2d 561 (Fla. 1967).
Id. at 461. High referred to the failure of the insurer to perfect its subrogation rights before settlement but did not explain what this meant.
The opinion in High does not directly address the question whether knowledge on the part of the third-party tortfeasors that the insured had received health insurance benefits from its own insurer prior to settlement would make any difference. Other Florida courts have held that where such knowledge exists, a release of the tort-feasor by the insured does not bar the insurer's subrogation rights against the third-party tortfeasor. See Dantzler Lumber & *163 Export Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116 (1934); Ortega v. Motors Ins. Co., 552 So.2d 1127 (Fla. 3d DCA 1989). As the Ortega court explained:
In National Surety Corp. v. Bimonte, 143 So.2d 709 (Fla. 3d DCA 1962), this court assumed, without deciding, that a tortfeasor who negotiated for and obtained a release of liability from the insured with knowledge of an insurer's perfected subrogation rights was estopped from raising that release as an affirmative defense to the insurer's subrogation action. We now explicitly adopt the principle well established in other jurisdictions that "where the tortfeasor obtains a release from the insured with knowledge that the latter has already been indemnified by the insurer such release of the tortfeasor does not bar the right of subrogation of the insurer." 16 Couch on Insurance 2d, 61:201 (2d ed. 1983), and cases cited therein (emphasis added). See also 31 Fla.Jur.2d Insurance § 958 (1981) ("If the tortfeasor, with knowledge of the insurer's perfected subrogation rights, negotiates for and obtains a release of liability from the insured, the tortfeasor is estopped to rely on the release, and the insurer may recover from the tortfeasor the amount that it paid to its insured.").
Id. at 1128 (emphasis added). We agree with Ortega. The rule that a settlement executed by the insured cannot act as a bar to an action for subrogation by the insurer against a third-party tortfeasor if, prior to the settlement, the tortfeasor learns of the insurer's perfected subrogation rights, has been adopted by a majority of American courts and seems more sensible than a rule that makes the health insurer's right to subrogation wholly dependent on actions taken by the insured for its own benefit.[4] Our supreme court in Matthews has chosen to recognize the right of a health insurer to recover health care payments from the tort-feasor even though the insured must still look to the tortfeasor to recover other damages. This places the insurer and the insured in competition for available compensation. A tortfeasor cannot expect to rely on a release from the victim if he knows that equity has transferred a portion of the victim's claim of recovery into the hands of a third party who has paid a part of what the tortfeasor by rights should pay. Because the defendants' lack of notice of Lincoln National's subrogation rights is not established on this record, the summary judgment based on the release cannot be sustained.
Defendants also contend that Lincoln is not entitled to subrogation because of its failure to intervene in the action by Skowronek against Chew and the owner/lessors. Although intervention seems a prudent course of action to take to avoid the quagmire Lincoln has fallen into, and even though intervention is clearly permitted under Florida law, Union Central Life Ins. Co. v. Carlisle, 593 So.2d 505 (Fla. 1992), we can find no basis to conclude that a subrogated insurer must intervene in a pending tort action to preserve its subrogation rights  at least under the collateral source statute in effect on the date of this accident. Farm Bureau Mut. Ins. Co. v. Orr, 379 N.W.2d 596 (Minn. Ct. App. 1985). Thus, Lincoln did not waive its right to subrogation by not intervening in the first action.
The only remaining issue concerns the effect of Lincoln's admission, in the second action, that the action was governed by the law of Connecticut. A response to a request for admission is "for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against that party in any other proceeding." Fla.R.Civ.P. 1.370(b). Therefore, Lincoln's admission does not affect this case.
For the foregoing reasons, we reverse the summary final judgment in favor of the defendants below and remand to the lower court for further proceedings.
REVERSED and REMANDED.
COBB and HARRIS, JJ., concur.
NOTES
[1] In addition to Chew, the named defendants were: (1) Mitsubishi Motor Sales of America, Inc. ("Mitsubishi"), the owner of the vehicle; (2) Walden Leasing, Inc. ("Walden"), which had leased the vehicle from Mitsubishi; and (3) Lindo's Rent-A-Car, Inc. ("Lindo's), which had leased the vehicle from Walden and rented it to Chew.
[2] The order stated:

1. The law of the State of Connecticut governs the existence of any alleged right of subrogation, subrogation lien and/or right of reimbursement or recovery on behalf of Lincoln National Health & Casualty Insurance Company for collateral source benefits.
2. The law of the State of Connecticut prohibits any right of subrogation, subrogation lien and/or right of reimbursement or recovery on behalf of Lincoln National Health & Casualty Insurance Company for collateral source benefits.
3. Lincoln National Health & Casualty Insurance Company failed to intervene in the above-styled cause of action even though they were on notice of the pending lawsuit prior to full and final settlement between the above-named parties, the execution of related releases, and entry of the Order of Dismissal in this action.
[3] Defendants also argue that Lincoln stands in the shoes of its insured and Skowronek had no right to recover those benefits from defendants because of Florida's collateral source rule, so that Lincoln was in turn prohibited from recovering those benefits. However, as Lincoln points out, the Florida Supreme Court has affirmed that the right of an insurance company to recover amounts paid to an insured from the tortfeasor is unaffected by the automotive "collateral source" statute. Blue Cross and Blue Shield of Florida, Inc. v. Matthews, 498 So.2d 421, 422 (Fla. 1986).
[4] See Nationwide Mut. Ins. Co. v. Dairyland Ins. Co., 191 W. Va. 243, 445 S.E.2d 184 (1994); Farm Bureau Mut. Ins. Co. v. Orr, 379 N.W.2d 596 (Minn. Ct. App. 1985).