PER CURIAM.
Lincoln National Health & Casualty Company (Lincoln National) appeals the final summary judgment entered by the trial court in favor of appellees. The trial court determined that Lincoln National has no legal right to pursue a claim for equitable subrogation against the appel-lees. We reverse based upon application of the law of the case doctrine.[1]
The facts underlying the instant litigation are succinctly set forth in our prior opinion in Lincoln Nat’l. Health & Cas. Ins. Co. v. Mitsubishi Motor Sales of Am., Inc., 666 So.2d 159 (Fla. 5th DCA), rev. denied, 676 So.2d 1369 (Fla.1996)(Lincoln *394 National I ), and will not be repeated here. For purposes of understanding the issues raised in the instant appeal, suffice it to say that Lincoln National, as the insurance carrier for Central Connecticut State University, instituted this equitable subrogation action in an effort to recover in excess of $500,000.00 which the company paid out for medical expenses incurred by Alan Skowronek. Such expenses resulted from medical care which Skowronek received for injuries he sustained in a car accident. At the time of the accident Skowronek was a student at the University and he was in Florida participating in a tennis tournament on behalf of the University. The accident was caused by the negligence of Kathleen Chew, who was driving a rental car owned and leased by various other tortfeasors. Skowronek filed a personal injury action in Florida against Chew and the other tortfeasors. When the case settled, Skowronek signed a general release in exchange for receiving the settlement monies from the tortfeasors. Thereafter, Lincoln National filed the instant action against the settling tortfeasors seeking equitable subrogation for the $500,000.00 which the company paid towards Skowronek’s medical expenses.
The trial court initially entered summary judgment against Lincoln National, concluding that Lincoln National’s equitable subrogation claim was controlled by the laws of Connecticut, the state which governed the insurance contract between Lincoln National and Skowronek, and that under Connecticut law Lincoln National possessed no legally cognizable subrogation right. The trial court also concluded that the general release signed by Skowro-nek, albeit without Lincoln National’s consent, barred any subrogation claim.
In Lincoln National I we reversed the summary judgment, concluding that Lincoln National’s claim for equitable sub-rogation was controlled by Florida tort law, not Connecticut contract law.[2] We further noted our agreement with the Third District’s analysis in Ortega v. Motors Ins. Corp., 552 So.2d 1127, 1128 (Fla. 3d DCA 1989) which adopted the well settled principle that, “where the tortfeasor obtains a release from the insured with knowledge that the latter has already been indemnified by the insurer such release of the tortfeasor does not bar the right of subrogation of the insurer.” See also 16 Couch on Insurance 2d, § 61:201 (2d ed.1983). Since the record at the time of Lincoln National I failed to establish whether the settling tortfeasors possessed notice of Lincoln National’s subrogation rights at the time of settlement, we reversed the summary judgment and remanded for a determination of that issue. We also rejected the argument that it was obligatory on the part of Lincoln National to have intervened in Skowronek’s personal injury lawsuit in order to preserve its subrogation rights. See Lincoln National, 666 So.2d at 163.
Upon remand Skowronek, who had stepped into the shoes of the settling tort-feasors by virtue of the terms of the parties’ settlement agreement, intervened in this action. The settling tortfeasors then collectively sought summary judgment relief. In spite of the clear rulings set forth in Lincoln National I, they essentially re-argued the same issues as those argued at the initial summary judgment hearing. They claimed that Connecticut law was applicable when considering Lincoln National’s equitable subrogation claim and *395 that the general release signed by Skowro-nek defeated Lincoln National’s equitable subrogation claim. At the summary judgment hearing, the trial court (perceptively and prophetically) indicated that the entry of a summary judgment against Lincoln National would probably be reversed on appeal. However, two months later, the court inexplicably entered summary judgment for the settling tortfeasors, concluding that Lincoln National possessed no equitable subrogation rights. The basis of the ruling appears to be the trial court’s determination that it would have been inequitable to order equitable subrogation in this case because by doing so the court would have altered the terms of the contract between Lincoln National and Skow-ronek which, under Connecticut law, prohibited subrogation. We disagree. Under Florida law there is no inequity in ruling that a settling tortfeasor must repay a third party, even though it be an insurance company, when the third party has paid for damages inflicted by that tortfeasor.
This court already established in Lincoln National I that the settling tort-feasors have no basis to assert defenses to the instant subrogation claim based upon Lincoln National’s insurance contract and that, with knowledge of Lincoln National’s subrogation rights, they could not rely on a release signed by Skowronek to avoid a claim for equitable subrogation. What we said in Lincoln National I bears repeating here:
The rule that a settlement executed by the insured cannot act as a bar to an action for subrogation by the insurer against a third-party tortfeasor if, prior to the settlement, the tortfeasor learns of the insurer’s perfected subrogation rights, has been adopted by a majority of American courts and seems more sensible than a rule that makes the health insurer’s right to subrogation wholly dependent on actions taken by the insured for its own benefit. Our supreme court in Matthews [Blue Cross and Blue Shield of Florida, Inc. v. Matthews, 498 So.2d 421 (Fla.1986) ] has chosen to recognize the right of a health insurer to recover health care payments from the tortfeasor even though the insured must still look to the tortfeasor to recover other damages. This places the insurer and the insured in competition for available compensation. A tortfeasor cannot expect to rely on a release from the victim if he knows that equity has transferred a portion of the victim’s claim of recovery into the hands of a third party who has paid a part of what the tortfea-sor by rights should pay.
Lincoln National I, 666 So.2d at 163. The foregoing quotation sets forth the established law of this case and reflects the public policy of Florida in regard to equitable subrogation.
While we are tempted to reverse and remand this matter to the trial court with instructions to enter .final judgment in favor of Lincoln National in an effort to avoid the entry of an erroneous third summary judgment, and a Lincoln National III here, we decline to do so because Lincoln National’s motion for summary judgment was not heard below and thus is not currently before us for review. The sua sponte entry of a summary judgment for the non-moving party, although not disallowed, is not a generally accepted practice. The better practice is to require the trial court to rule upon Lincoln National’s pending summary judgment motion. See Wizikowski v. Hillsborough County, 651 So.2d 1223 (Fla. 2d DCA 1995); Univ. of Miami v. Sosa, 629 So.2d 172 (Fla. 3d DCA 1993); First Union Nat’l. Bank of Florida v. Maurer, 597 So.2d 429 (Fla. 2d DCA 1992). Accordingly, we reverse the summary judgment entered against Lincoln National and remand this matter to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, PETERSON, and PALMER, JJ., concur.

. Points of law adjudicated in a prior appeal become the ‘law of the case,’ and are no longer open for discussion or consideration in subsequent proceedings. Gabor v. Gabor & Co., Inc., 599 So.2d 737, 738 (Fla. 3d DCA 1992).

. The right to pursue a claim for equitable subrogation "arises when the person discharging the obligation is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property.” National Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999), app’d, 765 So.2d 36 (Fla.2000). The policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge. Kala Inv., Inc. v. Sklar, 538 So.2d 909 (Fla. 3d DCA 1989). Florida courts are “committed to a liberal application of the rule of equitable subrogation.” Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116, 120 (1934).